```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division


H. JAY SPIEGEL & ASSOCIATES,   )
P.C.,                          )
                               )
     Plaintiff,                )
                               )
          v.                   )     1:08cv949 (JCC)
                               )
STEVEN M. SPIEGEL,             )
                               )
     Defendant.                )
```

### **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff H. Jay Spiegel & Associates, P.C.'s ("Plaintiff's") Motion for Preliminary Injunction.  For the reasons stated below, the Court will **deny** the motion.

### **I.  Background**

This case arises out of Defendant Steven M. Spiegel's ("Defendant's") alleged infringement of Plaintiff's trademarked domain name.  Plaintiff filed a complaint on September 12, 2008, stating claims for trademark infringement and unfair competition under both federal and Virginia common law (the "Complaint").  The allegations in the Complaint are as follows.

Plaintiff, a law practice organized as a Virginia professional corporation, has operated continuously under its name since 1989.  Plaintiff provides patent and trademark-related

1

legal services.  In January 1999, Plaintiff registered the domain name SPIEGELAW.COM with Network Solutions.  The next month, Plaintiff established a website at that domain – WWW.SPIEGELAW.COM ("Plaintiff's Website") – and applied for federal registration of the domain name as a Service Mark for the provision of legal services.  The application was assigned a serial number and registered on the Supplemental Register of the United States Patent and Trademark Office (the "USPTO") on November 7, 2000.

After using the mark in interstate commerce for five consecutive years, Plaintiff filed an application to register it with the USPTO on the Principal Register.  The application was assigned a serial number and entered on the Principal Register, as Registration No. 3,158,285, on October 17, 2006.

In March 1999, a Lisa M. Spiegel, believed to be Defendant's sister, registered the domain name SPIEGELLAW.COM with Network Solutions.  She did not create a website accessible at that address.  In 2007 or 2008, Defendant acquired ownership of the domain name; at some point in 2008, he created a website at WWW.SPIEGELLAW.COM ("Defendant's Website").  Defendant, an attorney, is a solo practitioner with a focus on employment law. Plaintiff and Defendant each maintain a law office with an Alexandria, Virginia address.  Plaintiff became aware of Defendant's Website in July 2008 when an opposing lawyer sent

Plaintiff an e-mail copied to Defendant at Defendant's website-based e-mail address. Upon discovery of Defendant's Website, Plaintiff sent Defendant a letter demanding removal of the site from the Internet and asking Defendant to convey his domain name to Plaintiff. Defendant refused to do so. Plaintiff then filed this suit.

On October 28, 2008, Plaintiff submitted a motion for a preliminary injunction. Defendant filed an opposition on November 10. Plaintiff's motion is before the court.

## II. Standard of Review

The issuance or denial of a preliminary injunction or temporary restraining order "is committed to the sound discretion of the trial court." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989). In determining whether an injunction is appropriate, a district court must apply the "balance-of-hardship" test. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977); *Ry. Labor Executives' Ass'n v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397, 1401-02 (E.D. Va. 1990) (Ellis, J.) (applying the *Blackwelder* test to determine whether to issue a temporary restraining order). The party requesting the injunction must also make a clear showing of irreparable harm. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d

353, 360 (4th Cir. 1991)).  The threatened irreparable harm must be "actual and imminent," not remote or speculative.  *Id.* (internal quotation omitted).

Under the test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest.  *See Hughes Network Sys., Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder*, 550 F.2d at 193-96.  No single factor can defeat a motion for a preliminary injunction or a temporary restraining order.  Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered." *Blackwelder*, 550 F.2d at 196.  If, however, the balance of the potential harms to the parties "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Direx Israel*, 952 F.2d at 812-13 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359).

### III. Analysis

Plaintiff requests a preliminary injunction forbidding Defendant from using the domain name SPIEGELLAW.COM. Granting the preliminary injunction would require the Court to order Defendant to shut down his website. "[P]reliminary injunctions are extraordinary remedies . . . to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation omitted). Whether a preliminary injunction should issue to preserve the *status quo ante litem* during the adjudication of this claim depends on the balance of hardship test set out in *Blackwelder*. *See* 550 F.2d at 194-95. Plaintiff must also make "a clear showing of irreparable harm as a condition" of his entitlement to a preliminary injunction. *Direx Israel*, 952 F.2d at 812 (citation omitted).

   A. <u>Irreparable Harm to Plaintiff</u>

The Fourth Circuit has noted that, in Lanham Act trademark infringement cases, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002). The *Scotts* court noted that the Fourth Circuit had never explicitly endorsed this presumption. *Id*. The presumption has been applied in the Eastern District of Virginia,

however, and was recognized as the general standard – if not outright embraced – by the Fourth Circuit in *Scotts*. *See* 315 F.3d at 273 n.3 (noting that the presumption was applied in the Lanham Act false advertising cases *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 128 F. Supp. 2d 926 (E.D. Va. 2001) and *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834 (E.D. Va. 1998)).

The Court will assume *arguendo* that applying the presumption would be appropriate if a likelihood of confusion exists. As explained below, however, even further assuming that Plaintiff could show a likelihood of confusion, Plaintiff is not entitled to a preliminary injunction under the *Blackwelder* balancing test. First, the balance of harms favors Defendant, not Plaintiff. Second, Plaintiff's likelihood of success on the merits is uncertain. Finally, the public interest favors neither party.

  B. Balance of Harms

Even after a party makes a "clear showing of irreparable injury absent preliminary injunctive relief, the *next* step" for the Court is to perform the *Blackwelder* balance of harms test. *Direx Israel*, 952 F.2d at 812 (quotation omitted) (emphasis in original). Thus, a showing of irreparable injury does not end the inquiry and does not automatically fulfill the *Blackwelder* balance of harms test in favor of Plaintiff. It is

6

possible, after all, that the harm to a plaintiff without a preliminary injunction may be irreparable but of a miniscule amount.  After a plaintiff makes a showing of irreparable injury, the court must still weigh the amount of likely harm to the plaintiff against the amount of harm likely to befall the defendant if the injunction issues.

    1. <u>Harm to Plaintiff</u>

As noted above, the Court assumes *arguendo* that Plaintiff has shown a likelihood of confusion between his mark and the domain name used by Defendant, thus activating the presumption of irreparable harm.  Plaintiff argues that the likelihood of confusion and the loss of goodwill caused by Defendant's use of the domain name SPIEGELLAW.COM create harm that outweighs any harm an injunction would cause Defendant.  Mem. in Supp. at 18.

Plaintiff claims that he will suffer harm because his law practice, while physically based in Alexandria, Virginia, is international in scope; many clients contact him through his website.  Moreover, Plaintiff has devoted time and energy to creating and updating his website, which has existed continuously for more than eight years.  The Court agrees that Defendant's use of the domain name SPIEGELLAW.COM poses some threat to the goodwill Plaintiff has built up in his domain name.  The names are nearly identical; some risk of confusion certainly exists.

Individuals searching the Internet for Plaintiff could be misled or diverted by Defendant's website.  Additionally, persons who were given oral instructions to visit "WWW.SPIEGELAW.COM" could be confused about the website's spelling and stumble onto Defendant's site instead of Plaintiff's.  Plaintiff has submitted evidence that at least one individual was confused by the presence of Defendant's Website.

The Court takes seriously Plaintiff's allegations of present harm and potential future harm.  On balance, though, the Court is not convinced that Plaintiff will be harmed to a significant extent during the pendency of this litigation.  First, Plaintiff operates a specialized legal practice, focusing on patent and trademark law.  Defendant practices employment law.  A potential client searching for a patent lawyer named Spiegel and finding Defendant's Website would quickly realize he had located the wrong attorney.  An individual who wanted to visit a website he had *heard* referred to as WWW.SPIEGELAW.COM might just as easily visit WWW.SPIEGEL-LAW.COM, another publicly-available website used by a solo legal practitioner with the surname "Spiegel."  *See* Def.'s Mem. at 5.  In other words, the online presence of Defendant does not pose a wholly novel threat to the ability of potential clients to locate Plaintiff's Website.[1]

---

[1] The Court acknowledges that persons who know that Plaintiff's website is located at "WWW.SPIEGELAW.COM" probably would be more likely to *mis-type* Defendant's web address than "WWW.SPIEGEL-LAW.COM."  But, because of the different legal practices of Plaintiff and Defendant, people who mis-enter

While a "likelihood of confusion" may well exist as an element of trademark infringement under the Fourth Circuit's *Pizzeria Uno* test, the actual possibility that potential clients will be confused in a way that leads to serious harm to Plaintiff appears low. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (outlining a seven-factor test to determine whether a likelihood of confusion exists).  In addition, the Court has before it no indication that Defendant has been attempting to "poach" Plaintiff's clients.  Any such attempts would likely be counter-productive for an employment lawyer.  Finally, the existence of a single mis-directed e-mail does not weigh heavily in Plaintiff's favor.  Without more, the e-mail shows an isolated instance of confusion by a fellow attorney rather than large-scale confusion among Plaintiff's clients.

Plaintiff may be correct that the very existence of Defendant's Website implicitly harms the goodwill of his business.  Given the nature of this dispute, which involves similar-sounding but discrete Internet domain names, the Court does not believe that the continued existence of Defendant's website while the litigation is pending will impair the goodwill Plaintiff has in his business to a significant extent – and certainly not to an extent that would outweigh the harm that

---

Plaintiff's web address and type Defendant's instead are also unlikely to mistake Defendant for Plaintiff.

shutting down Defendant's website would cause Defendant.

### 2. Harm to the Defendant

Defendant convincingly argues that an injunction forbidding him to use the domain name SPIEGELLAW.COM, which would require him to shut down his website at WWW.SPIEGELLAW.COM, presents a substantial likelihood of significant harm.  Defendant uses the website primarily in his capacity as class counsel in a civil rights class action lawsuit.  Through the website, Defendant is able to share information and communicate with members of the class.  He claims to have spent eighteen months planning the website before its launch earlier this year.  Shutting the website down, Defendant argues, would cause "irreparable harm to [D]efendant and to the public interest."  Def.'s Mem. at 14.  The Court agrees that shutting down Defendant's website would disrupt, perhaps severely, Defendant's law practice and harm the interests of the class action plaintiffs he represents.  The nature of a class action lawsuit puts a premium on the ability of counsel to communicate with individuals who may be geographically diverse and, indeed, may never meet their attorney in person.  Disrupting a major line of communication and information sharing between class counsel and a class of plaintiffs poses a real threat to the ability of counsel to advocate in an effective and efficient manner.

3. <u>Balancing the Harms</u>

The continued existence of Defendant's Website may cause some confusion to potential clients of Plaintiff. It may also leach some portion of the goodwill that Plaintiff has built up in his domain name. The Court, however, does not believe that the actual amount of harm to Plaintiff is likely to be significant, at least during the time this lawsuit is pending. In addition, any harm Plaintiff will suffer going forward is speculative and difficult to quantify. Defendant, on the other hand, would be immediately and severely harmed if the Court granted an injunction. An injunction would shut down his website and interrupt ongoing communications between Defendant and numerous class-action clients. On balance, the harm to Defendant outweighs the harm to Plaintiff.

C. <u>Plaintiff's Likelihood of Success on the Merits</u>

When the balance of harms favors the defendant, "a stronger showing on the merits is required" before a preliminary injunction will issue. *Rum Creek Coal Sales*, 926 F.2d at 359. In this case, the balance-of-harms test favors Defendant. Unless Plaintiff can make a strong showing of a likelihood of success on the merits, the preliminary injunction must be denied.

In order to show trademark infringement and unfair competition under the Lanham Act and unfair competition under Virginia common law, a plaintiff must demonstrate: (1) evidence

11

of ownership of a valid and protectable mark; (2) evidence of the use of the mark by an infringer; and (3) evidence of a likelihood of confusion. *See Lone Star Steakhouse & Saloon Inc.*, 43 F.3d at 930 n.10 (4th Cir. 1995) (noting that the elements for the federal and Virginia causes of action are "essentially the same"); *see also Carefirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006). The Court finds it unclear whether Plaintiff can show that his mark is protectable at this stage of the litigation, and so the overall likelihood of success is uncertain.

Trademarks fall into one of four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) (Friendly, J.); *see Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 538-39 (4th Cir. 2004); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124-25 (4th Cir. 1990). Generic marks do not merit any trademark protection, whereas arbitrary, fanciful, or suggestive marks are entitled to trademark protection because they are "inherently distinctive" – that is, "their intrinsic nature serves to identify a particular source of a product." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Descriptive marks occupy the middle ground. They "describe a function, use, characteristic, size, or intended

purpose," are not inherently distinctive, and can be protected only if they have acquired a "secondary meaning" – i.e., when in the minds of the public the descriptive term identifies the *source* of a product rather than the product itself.  *See Retail Servs.*, 364 F.3d at 538-39 (citations and quotations omitted). Suggestive marks, by contrast, are inherently distinctive.  They "connote, without describing, some quality, ingredient, or characteristic of the product . . . . they conjure images of the associated products."  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

Plaintiff claims that his mark is "stronger than a merely descriptive mark and . . . more likely than not suggestive."  Pl.'s Mem. at 11.  Plaintiff makes two arguments in support of this claim.  First, he contends that the mark is inherently suggestive, because "SPIEGELAW.COM" could connote the provision of a variety of legal services via the Internet and so must be more than merely descriptive.  *Id.* at 10-11.  Second, Plaintiff argues that the mark has acquired distinctiveness by virtue of its use in trade for at least five years, under Lanham Act § 2(f), and so was allowed to be registered on the Principal Register like other suggestive and arbitrary and fanciful marks. 15 U.S.C. § 1052(f); *see* Pl.'s Mem. at 10-11.

The Court cannot agree, at this preliminary stage of the litigation, that Plaintiff's mark is inherently suggestive.

13

The term "SPIEGELAW" appears to denote some form of legal services provided by a person or company named Spiegel. The addition of ".COM" indicates that potential clients or customers can access the services of Spiegel over the Internet. One test for descriptiveness asks whether a person without actual knowledge of the services provided would have difficulty in determining its nature; if so, the mark is less likely to be descriptive. *See Sara Lee Corp.*, 81 F.3d at 464 ("a person without actual knowledge would have difficulty in ascertaining the nature of the products that the [suggestive] marks represent"). Viewed in this light, it appears that Plaintiff will have a difficult time establishing the outright suggestiveness of his mark. The Court at this time cannot agree that Plaintiff's mark "connote[s], without describing, some quality, ingredient, or characteristic of the product" or "conjure[s] images of the associated product[]." *Id.*

Plaintiff's stronger argument relies on the mark's registration on the Principal Register. A mark can be registered when it is distinctive or has acquired distinctiveness; use in commerce for five years provides prima facie evidence of distinctiveness. 15 U.S.C. § 1052(f). "Any registration . . . of a mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark." 15 U.S.C. § 1115(a). The fact of registration, though, "shall not

14

preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." *Id.* Defendant, then, remains free to rebut the protectable nature of Plaintiff's mark. He argues that the mark is at most descriptive, not suggestive, and that it has not acquired a "secondary meaning" that would merit trademark protection broad enough to oust him from his web address. At most, Defendant states, any secondary meaning the mark has acquired is limited to Plaintiff's legal specialty, trademark and copyright law. Mem. in Opp'n at 6.

Secondary meaning is acquired by a descriptive mark when "a substantial portion of the consuming public . . . associate[s] the term with a particular business." *Perini Corp.*, 915 F.2d at 125. "If a trade name has not acquired secondary meaning, the purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark." *Id.* (citation omitted). Deciding whether secondary meaning exists requires a fact-intensive inquiry. *Id.* (citing *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985) (setting out a five-factor test for secondary meaning))). At this preliminary stage of the litigation, whether secondary meaning exists and, if so, to what extent it makes Plaintiff's mark distinctive, is unclear. The Court cannot presently say that Plaintiff is likely to win on the merits

because Defendant may possess a defense based on the "protectability" prong of Plaintiff's Lanham Act and Virginia claims.

### D. The Public Interest

The public interest favors the protection of valid trademark rights against infringement. *See Providence Prods., LLC v. Implus Footcare, LLC*, 2008 WL 227281 (Slip Copy), at *2 (W.D. N.C. Jan. 25, 2008). In this case, though, the question of whether Plaintiff has a protectable trademark has not been clearly resolved. For his part, Defendant has argued that members of a class action lawsuit for which he is class counsel rely on his website. The public interest also favors efficient communication between lawyers and their clients. On balance, the Court finds that the public interest does not clearly favor either granting or denying a preliminary injunction.

### E. Balance of *Blackwelder* factors

Plaintiff, then, has not demonstrated that the balance of harms test favors him or that he is sufficiently likely to prevail on the merits for the Court to overlook the fact that the balance of harms favors Defendant. Moreover, the public interest between the two parties is presently neutral. The Court finds that Plaintiff has not shown an entitlement to the "extraordinary remed[y]" of a preliminary injunction. *MicroStrategy Inc.*, 245 F.3d at 339.

16

## IV. Conclusion

For the reasons stated above, the Court will **deny** Plaintiff's Motion for Preliminary Injunction.

An appropriate Order will issue.

December 11, 2008                             /s/
Alexandria, Virginia                     James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE