IN THE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Civil Action No.  1:08cv949
JCC/TRJ

H. JAY SPIEGEL & ASSOCIATES, P.C.,

Plaintiff,

v.

STEVEN M. SPIEGEL,

Defendant.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

H. Jay Spiegel
Virginia Bar Number 20647
Attorney for Plaintiff
P.O. Box 11
Mount Vernon, VA   22121
Telephone:   (703) 619-0101
Facsimile:   (703) 619-0110
   E-mail:   jayspiegel@aol.com

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........................................................... ii-iv

I.     INTRODUCTION .............................................. 1

II.    FACTS NOT IN DISPUTE .................................... 2

III.   FACTUAL BACKGROUND ................................... 6

IV.    ARGUMENT ...................................................... 9

       1.  Requirements for Entry of Summary Judgment ............................ 9

       2.  Requirements to Show Infringement and Unfair Competition ....... 9

       3.  Likelihood of Confusion Analysis ................................................. 11

       4.  Defendant's Alleged Defenses ........................................................ 20

V.     CONCLUSION ..................................................... 29

i

# <u>TABLE OF AUTHORITIES</u>

Page(s):

**Cases:**

*AMP Inc. v. Foy,*
   540 F.2d 1181, 1186, 189 USPQ 392, 397 (4th Cir. 1976) .................. 19

*Anderson v. Liberty Lobby, Inc. ,*
   477 U.S. 242, 247-48 (1986) ................................................. 9

*Best & Co. v. Miller,*
   167 F.2d 374, 377, 77 USPQ 133, 135-36 (2d Cir. 1948) .................. 18

*Black & Decker Inc. v. Pro-Tech Power Inc.,*
   26 F.Supp. 2d 834, 853 (E.D. Va. 1998) ............................... 28

*Brock v. Entre Computer Ctrs.,*
   933 F2d 1253, 1259 (4th Cir. 1991) ..................................... 9

*CareFirst of Md., Inc. v. First Care, P.C.,*
   434 F3d 263, 268 (4th Cir. 2006) ...................................... 11,19

*Clinton,*
   302 F.2d at 748, 133 USPQ at 523 ...................................... 14

*Emergency One Inc. v. American Fire Eagle Engine Co.,*
   332 F3d 264, 267-269, 67 USPQ 2d 1124 (4th Cir. 2003) ................... 10

*Evans v. Techs. Applications & Serv., Co.,*
   80 F3d 954, 958-59 (4th Cir. 1996) ...................................... 9

*Giant Food, Inc. v. Nation's Foodservice, Inc.,*
   710 F2d 1565, 1571 (Fed. Cir. 1983) ................................... 20

*Holiday Inns, Inc. v. Holiday Inns,*
   177 USPQ 640, 646-47 (D.C.S.C. 1973) 224 USPQ at 194 ............... 18

*Homeowners Group,*
   931 F2d 1100, 1105 (6th Cir. 1991) ...................................... 10

*IDV North America, Inc. v. S&M Brands, Inc.,*
   26 F.Supp. 2d 815, 826 (E.D. Va 1998) ............................... 15

ii

*Lone Star Steakhouse & Saloon Inc. v. Alpha of Virginia, Inc.,*
    43 F3d 922, 930 at note 10, 33 USPQ 2d 1481 (4th Cir. 1995) ............   9-10,12,13,17

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog LLC,*
    507 F3d 252, 259-260 (4th Cir. 2007) ....................................   11,13,19

*Lyons P'ship, L.P. v. Morris Costumes, Inc.,*
    243 F.3d 789, 804, 58 USPQ 2d 1102 (4th Cir. 2001) ........................   19

*Philip Morris v. MidWest Tobacco Inc.,*
    9 U.S.P.Q. 2d 1210, 1214 (E.D. Va. 1988) .........................................   17,19

*Pizzeria Uno Corp. v. Temple,*
    747 F2d 1522, 1527 (4th Cir. 1984) .....................................   11-14,18

*Plough, Inc. v. Kreis Laboratories,*
    314 F2d 635 (9th Cir. 1963) .........................................   14

*Retail Services Inc. v. Freebies Publishing,*
    364 F3d 535, 538-539 (4th Cir. 2004) ....................................   12

*Sara Lee Corp. v. Kayser-Roth Corp.,*
    81 F3d 455, 461, 464 (4th Cir. 1996).....................................   12,28,29

*Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,*
    748 F2d 669 (Fed. Cir. 1984) ...............................   14

*Synergistic Int'l, LLC v. Korman,*
    470 F3d 162, 172 (4th Cir. 2006) ...........................   12

*Union Carbide Corp. v. Ever-Ready, Inc.,*
    531 F.2d 366, 379, 188 USPQ 623 (7th Cir. 1976) ..............   12

*U.S. Search, LLC v. U.S. Search.Com Inc.,*
    300 F3d 517, 523 (4th Cir. 2002) ..........................   10

*Watkins Products, Inc. v. Sunway Fruit Products, Inc.,*
    311 F2d 496 (7th Cir. 1962) ................................   14

*Weiss Associates Inc. v. HRL Associates Inc.,*
    902 F2d 1546, 1549, 14 USPQ 2d 1840, 1842-3 (Fed. Cir. 1990) .......   20

iii

**Regulation:**

15 U.S.C. 1051(a) ..................................................................   7

15 U.S.C. § 1052(e)(4) .........................................................   7

15 U.S.C. § 1114(a) ..............................................................   10

15 U.S.C. § 1115 ...................................................................   10

15 U.S.C. § 1115(a) ..............................................................   21

15 U.S.C. § 1115(b) ..............................................................   22

*3 Thomas J. McCarthy, Trademarks & Unfair Competition,*
    § 24:24 (4th Ed. 1996) ......................................................   15

**Rules:**

Fed.R.Civ.P. 56 ....................................................................   1

Fed.R.Civ.P. 56(c)................................................................   9

Local Civil Rule 56 ..............................................................   1

**Compliance with Local Civil Rule 7:**

As required by Local Civil Rule 7, Plaintiff met and conferred with Defendant on April 15, 2009. Plaintiff informed Defendant of his intention to file the Motion for Summary Judgment and accompanying papers and documents the same day.  Defendant's only disagreement concerns the timing of the filing and the Briefing Schedule.  Plaintiff agreed that if Defendant wishes to move the Court for an Order changing the Briefing Schedule from that which is set forth in Local Civil Rule 7, Plaintiff would refrain from opposing that Motion.

Pursuant to Fed.R.Civ.P. 56 and Local Civil Rule 56, Plaintiff, H. JAY SPIEGEL &

ASSOCIATES, P.C. ("Plaintiff"), submits this Memorandum in support of Plaintiff's Motion for

Summary Judgment against Defendant, Steven M. Spiegel (Defendant).

## I.   <u>INTRODUCTION</u>

Plaintiff owns the federally registered Service Mark "SPIEGELAW.COM" which has

been in continuous use in interstate commerce since February 23, 2000.  See U.S. Service Mark

Registration No. 3,158,285 for "SPIEGELAW.COM" (sometimes referred to as Plaintiff's

Mark).  Plaintiff's Mark covers legal services; providing information at the specific request of

end-users by means of telephone or global computer networks.  Defendant has been operating a

website accessible at the service mark SPIEGELLAW.COM (sometimes referred to as

Defendant's mark) since March, 2008.  That website advertises and promotes Defendant's legal

services described therein as legal representation to federal and private sector employees in

disability and discrimination matters, environmental and general practice matters.  Plaintiff's law

practice as advertised and promoted on the website accessible at the service mark

SPIEGELAW.COM is mainly directed to aspects of intellectual property law including issues

involving patents, trademarks, copyrights, unfair competition and licensing of intellectual

property.  There is a significant overlap between the services advertised and promoted by

Plaintiff and those advertised and promoted by Defendant as conceded by Defendant.

Plaintiff's federal registration of "SPIEGELAW.COM" on the Principal Register under

circumstances in which the U.S. Patent and Trademark Office did not require submission of

evidence of secondary meaning provides *prima facie* evidence that Plaintiff's mark is suggestive.

Plaintiff's mark and Defendant's mark are virtually identical, only differing by the inclusion of

an additional "L" in Defendant's mark.  Plaintiff's Mark and Defendant's mark sound identical and have close resemblance in appearance.  They also have the same meaning.  The respective channels of commerce of Plaintiff's Mark and Defendant's mark are also the same or similar.  Moreover, the respective parties use similar types of facilities in conducting their businesses and the advertising used by the two parties, namely, the websites, are in the same category.  Defendant knew of the existence of Plaintiff's website before Defendant placed his website on the Internet.  Finally, at least one instance of actual confusion has been uncovered.

Thus, Plaintiff has established a likelihood of confusion between Plaintiff's use of Plaintiff's Mark "SPIEGELAW.COM" and Defendant's use of Defendant's mark "SPIEGELLAW.COM" to access respective websites.

Defendant interposed a number of defenses to a finding of infringement in his Answer, but Defendant has provided insufficient or no evidence in support of those defenses.

For the reasons set forth above and others that will become evident in the following arguments, Plaintiff is entitled to summary judgment on its counts for Federal service mark infringement, federal unfair competition and common law service mark infringement and unfair competition under Virginia common law.

## II.   <u>FACTS NOT IN DISPUTE</u>

1. Plaintiff owns federal Service Mark Registration No. 3,158,285, registered October 17, 2006, for the Service Mark "SPIEGELAW.COM" (Plaintiff's Mark).  See Exhibit 1 to the accompanying Spiegel Declaration (hereinafter cited as, for example, Exh 1).

2. Plaintiff's Mark was registered by the U.S. Patent and Trademark Office (USPTO) without any requirement that Plaintiff provide evidence of secondary meaning.  Exh 2.

2

3.   Plaintiff has been continuously using the mark "SPIEGELAW.COM" in association with a website advertising and promoting Plaintiff's legal services since February, 2000.  Exhs 3 and 4.[1]

4.   Plaintiff's website prominently displays Plaintiff's Mark.  Exh 5.

5.   Defendant is using the mark "SPIEGELLAW.COM" to facilitate access to his website advertising and promoting his legal services.  Exh 6.

6.   Defendant has been operating his website accessible at www.spiegellaw.com since March 2, 2008.  Exh 7.  Dep. Transcript at 19:1-8.[2]

7.   At the time Defendant's website became accessible on the Internet on March 2, 2008, Defendant was aware of Plaintiff's website.  Exh 7.  Dep. Transcript at 19:9-17.

8.   The only difference between Plaintiff's Mark and Defendant's mark is a single letter "L."

9.   Plaintiff and Defendant both advertise and promote their respective legal services on their respective websites accessible at the service marks SPIEGELAW.COM and SPIEGELLAW.COM, respectively.  There is significant overlap between the services offered by Plaintiff and Defendant, Exh 7 Dep. Transcript at 48:22-49:4, 53:16-54:4, and Exh 8, Exhibits to the Deposition Testimony.  Defendant's website offers legal services including "general practice matters."  (Exh 6).

---

[1]   During discovery, Plaintiff produced monthly invoices from Earthlink evidencing hosting of Plaintiff's website from February 2000 and continuously to date.  These invoice copies were identified with Bates Nos. P-00137 - P-00340.  Exhibit 3 consists of a representative sampling of those invoices to avoid overburdening the Court with a 200+ page Exhibit.

[2]   References to the Deposition of Defendant Steven M. Spiegel that occurred on February 5, 2009 will take on the format 19:1-8 where "19" is the page number and "1-8" are the lines on that page.

10. The facilities Plaintiff and Defendant use in their respective businesses are similar (Exh 7, Dep. Transcript at 4:12-14 (Defendant's legal address) and Exh 6 (address of firm the same) and Spiegel Dec. at 3 (home-based business - Complaint at 1).

11. Plaintiff and Defendant use similar advertising to promote their law practices, namely, use of Internet websites.  Exhs 5 and 6.

12. Evidence of actual confusion has been uncovered (Exh 9).

13. Defendant has interposed the following defenses:   Failure to state a claim upon which relief can be granted; laches; estoppel; waiver; and lack of actual damages or injuries (Exh 10, Defendant's Answer).

14. Defendant has produced no documents that call into question the validity of Plaintiff's federal Registration No. 3,158,285 for the mark SPIEGELAW.COM (Exh 11, response to Document Request No. 22).

15. Defendant has produced no documents calling into question Plaintiff's ownership of the mark "SPIEGELAW.COM" (Exh 11, response to Document Request No. 23).

16. Defendant has produced no documents calling into question Plaintiff's exclusive right to use the registered Service Mark "SPIEGELAW.COM" in commerce on or in connection with the services specified in Plaintiff's Certificate of Registration (Exh 11, response to Document Request No. 24).

17. Defendant has produced no documents evidencing that Plaintiff's federal registration of the mark "SPIEGELAW.COM" was obtained fraudulently (Exh 11, response to Document Request No. 25).

4

18. Defendant has produced no documents evidencing that Plaintiff has abandoned the mark "SPIEGELAW.COM (Exh 11, response to Document Request No. 26).

19. Defendant has produced no documents evidencing that Plaintiff is using the registered Service Mark "SPIEGELAW.COM" in a manner that misrepresents the source of the services in connection with which the mark is used (Exh 11, response to Document Request No. 27).

20. Defendant has produced no documents evidencing that his use of the mark "SPIEGELLAW.COM" to facilitate access to a website and/or e-mail server is a use other than as a mark (Exh 7, Spiegel Dep. at 81:14-82:5).

21. Defendant has produced no documents evidencing that his use of Defendant's mark to facilitate access to a website and/or e-mail server is a use of Defendant's individual name in his own business (Exh 7, Spiegel Dep. at 83:5-7).

22. Defendant has produced no documents evidencing that his use of the mark "SPIEGELLAW.COM" to facilitate access to a website and/or e-mail server is a use of the individual name of anyone in privity with him (Exh 7, Spiegel Dep. at 83:14-17).

23. Defendant has failed to produce any documents evidencing that his use of the mark "SPIEGELLAW.COM" to facilitate access to a website and/or e-mail server is a use of a term or device which is descriptive of and used fairly and in good faith only to describe Defendant's services.  Defendant's manner of use of Defendant's mark to facilitate access to Defendant's website is identical to the manner by which Plaintiff's Mark is used to facilitate access to Plaintiff's website.

24. Defendant has failed to produce any documents evidencing that Plaintiff's use of the mark "SPIEGELAW.COM" is in violation of the Anti-Trust laws of the United States (Exh 11, response to Document Request No. 29).

## III.   FACTUAL BACKGROUND

H. JAY SPIEGEL & ASSOCIATES, P.C. (Plaintiff) is a Virginia professional corporation established in December, 1988, having a mailing address at P.O. Box 11, Mount Vernon, Virginia 22121, and a physical address at 8778 Thomas J. Stockton Parkway, Alexandria, Virginia 22308 (Plaintiff's residence).   (Complaint at 1).   Plaintiff has continuously used the mark "SPIEGELAW.COM" in connection with the promotion and rendering of legal services since February 23, 2000.   (Exhs 3-5).   Plaintiff owns U.S. Service Mark Registration No. 3,158,285 (Plaintiff's mark), registered on the Principal Register of the U.S. Patent and Trademark Office on October 17, 2006 (see Exh 1).   Plaintiff's mark covers the following services:   "legal services; providing information at the specific request of end-users by means of telephone or global computer networks, in [International] Class 42."

On January 7, 1999, Plaintiff registered the domain name "SPIEGELAW.COM" with Network Solutions.   Exh 12.   No later than February 23, 2000, Plaintiff established a website (Plaintiff's website) on the global computer network known as the Internet accessible using the web address WWW.SPIEGELAW.COM.   Exh 4.

Although, as explained above, Plaintiff owns Registration No. 3,158,285, initially, Plaintiff filed an application for federal registration of the Service Mark "SPIEGELAW.COM" on February 24, 2000.   That application was assigned Serial No. 75/927,454, and eventually registered as Registration No. 2,403,034 on November 7, 2000 on the Supplemental Register.

6

See Exh 13.  The registration was registered on the Supplemental Register because during the

prosecution of that application, the Patent and Trademark Office determined that the mark was

primarily a surname under 15 U.S.C. § 1052(e)(4).  Exh 14.  Plaintiff amended the application to

seek registration on the Supplemental Register and the mark was registered on that basis.  The

date of first use was claimed as February 23, 2000.  Exh 13.

On November 19, 2005, application Serial No. 78/757,666 was filed by Plaintiff under

Section 1(a) of the Lanham Act, 15 U.S.C. 1051(a) seeking registration on the Principal Register.

See Exh 2.[3]  Plaintiff's registration was registered on the Principal Register on October 17, 2006.

Plaintiff has continuously used the Service Mark "SPIEGELAW.COM" in association with the

services described in Plaintiff's Certificate of Registration since the date of first use printed

thereon (February 23, 2000) and to date.  (See Exhs 3-4).

Defendant is an individual practicing law in the city of Alexandria, Virginia at 3917

Keller Avenue, Alexandria, Virginia   22302-1817.  (Complaint at 2).  Over two months after

Plaintiff had registered Plaintiff's domain name "SPIEGELAW.COM" with Network Solutions

(see Exh 12), Lisa S. Spiegel registered the domain name "SPIEGELLAW.COM" (Defendant's

domain name) with Network Solutions.  See Exh 15.  On information and belief, Ms. Spiegel

---

[3] In Plaintiff's Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, Plaintiff inadvertently erroneously stated that the application for registration was filed under Section 2(f) of the Lanham Act based upon a claim of acquired distinctiveness as a result of over 5 years continuous use of the mark in interstate commerce.  In fact, no such claim was made, the application was filed under Section 1(a) of the Lanham Act, and the mark was registered on the Principal Register without any requirement by the U.S. Patent and Trademark Office that Plaintiff provide any proof of secondary meaning.  See Exh 2, Spiegel Dec., and the file history of this application, Bates Nos. P00006 - 25.  This inadvertent error weakened Plaintiff's arguments in favor of the Motion for Preliminary Injunction and did not operate to the prejudice of Defendant since the Motion was denied.

never created nor operated a website accessible on the Internet at the web address "SPIEGELLAW.COM" used to promote her legal services.  See Exh 16 which consists of pages produced by Ms. Spiegel under subpoena.  On information and belief, Ms. Spiegel's sole use of the domain name "SPIEGELLAW.COM" was as an e-mail server allowing third parties to communicate with her at e-mail addresses taking on the following configuration: "XYZ@SPIEGELLAW.COM."   Documents produced by Ms. Spiegel under subpoena fail to establish any use by her of the domain name "SPIEGELLAW.COM" as a Service Mark, or at most, any such use was *diminimis*.

Defendant is the brother of Lisa S. Spiegel.  (Complaint at 12-13; Answer at 12-13).  Defendant acquired ownership of Defendant's domain name from his sister in 2007 (see Exh 17).  Although his sister never operated a website at the web address "WWW.SPIEGELLAW.COM," Defendant created a website accessible at that web address in March, 2008.  See Exhs 7 (Spiegel Dep. at 19:1-8) and 19.  Defendant was aware of Plaintiff's use of the federally registered service mark SPIEGELAW.COM to access Plaintiff's website before Defendant established his website.  Spiegel Dep. at 19:9-17.

Plaintiff first became aware of the existence of Defendant's website in July, 2008 when a third party Counsel representing a client engaged in a dispute with a client of Plaintiff sent Plaintiff an e-mail for which a copy was noted to Defendant at Defendant's web address.  Exh 9.  Plaintiff immediately sent a letter (Exh 18) to Defendant demanding that Defendant remove their website accessible at Defendant's domain name from the Internet and convey Defendant's domain name to Plaintiff.  Despite subsequent correspondence between the parties (Exh 19), Defendant has steadfastly refused to take any action to avoid a likelihood of confusion between

8

Plaintiff's long established use and federal registration of Plaintiff's mark, and Defendant's recent establishment of Defendant's website accessible at Defendant's mark.

## IV.   ARGUMENT

### 1.   Requirements for Entry of Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F3d 954, 958-59 (4th Cir. 1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F2d 1253, 1259 (4th Cir. 1991) (citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id*. at 248.

### 2.   Requirements to Show Infringement and Unfair Competition

In order to show trademark or service mark infringement under the Lanham Act, trademark or service mark infringement under Virginia Common Law, and unfair competition under the Lanham Act, the moving party must demonstrate (1) evidence of ownership of a valid and protectable mark, (2) evidence of use of the mark by the infringer, and (3) evidence of a likelihood of confusion. *Lone Star Steakhouse & Saloon Inc. v. Alpha of Virginia Inc.*, 43 F3d

922, 930 at note 10, 33 USPQ 2d 1481 (4th Cir. 1995).  See also, *U.S. Search, LLC v. U.S. Search.Com Inc.*, 300 F3d 517, 523 (4th Cir. 2002).

Plaintiff owns valid and protectable rights in the federally registered Service Mark "SPIEGELAW.COM."  This is evidenced by Plaintiff's ownership of Federal Service Mark Registration No. 3,158,285, registered October 17, 2006.  Plaintiff's ownership of the mark "SPIEGELAW.COM" is uncontested by Defendant.  The existence of Plaintiff's registration comprises *prima facie* evidence that "SPIEGELAW.COM" is a valid and protectable mark, is owned by Plaintiff, and that Plaintiff has the exclusive right to use the mark "SPIEGELAW.COM" in commerce.  15 U.S.C. § 1115.  As such, Plaintiff can show ownership of valid and protectable rights for trademark infringement pursuant to 15 U.S.C. § 1114(a).

However, federal registration of a mark does not, in and of itself, establish ownership rights in the mark; rights in a registered mark are acquired through actual use, just as for unregistered marks.  See *Emergency One Inc. v. American Fire Eagle Engine Co.*, 332 F3d 264, 267-269, 67 USPQ 2d 1124 (4th Cir. 2003)(citing *Homeowners Group*, 931 F2d 1100, 1105 (6th Cir. 1991)).  Plaintiff has demonstrated continuous use of the mark "SPIEGELAW.COM" in commerce through its operation of a website accessed at the web address WWW.SPIEGELAW.COM since February 23, 2000.  See Exhs 3, 4 and 5.

As such, Plaintiff has shown ownership of "SPIEGELAW.COM," both in the context of its ownership of Registration No. 3,158,285, and also in the context of its continuous use of the registered Service Mark in interstate commerce since February 23, 2000.

It is incontestable that Defendant is using Defendant's mark to facilitate access to its website at "WWW.SPIEGELLAW.COM."  Exh 6 shows pertinent pages from that website

10

printed out from the Internet.  As such, Plaintiff has shown use by Defendant of the mark

"SPIEGELLAW.COM" which is virtually indistinguishable from Plaintiff's registered Service

Mark "SPIEGELAW.COM."

### 3.    Likelihood of Confusion Analysis

Defendant's use of the mark "SPIEGELLAW.COM" to facilitate access to its website at

[WWW.SPIEGELLAW.COM](WWW.SPIEGELLAW.COM) creates a likelihood of confusion with Plaintiff's registered Service

Mark "SPIEGELAW.COM."

In the Fourth Circuit, likelihood of confusion is judged according to the factors outlined

by the Court in *Pizzeria Uno Corp. v. Temple*, 747 F2d 1522, 1527 (4th Cir. 1984).  As noted by

the Court in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog LLC*, 507 F3d 252, 259-260 (4th

Cir. 2007), the *Pizzeria Uno* factors "are not always weighted equally, and not all factors are

relevant in every case.  See *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F3d 263, 268 (4th Cir.

2006)."

The *Pizzeria Uno* factors are as follows:

(1)    the strength or distinctiveness of the plaintiff's mark;
(2)    the similarity of the two marks;
(3)    the similarity of the goods or services the marks identify;
(4)    the similarity of the facilities the two parties use in their businesses;
(5)    the similarity of the advertising used by the two parties;
(6)    the defendant's intent; and
(7)    actual confusion.

(i)    Factor (1):   the strength or distinctiveness of the mark

Generally speaking, a mark falls into one of four groups: (1) generic; (2) descriptive; (3)

suggestive; and (4) arbitrary or fanciful.  Generic marks are not entitled to any protection.

Descriptive marks are entitled to little, if any protection.  Suggestive marks are entitled to

11

protection, but the protection is not as broad as arbitrary and fanciful marks.  The Fourth Circuit

in *Retail Services Inc. v. Freebies Publishing*, 364 F3d 535, 538-539 (4th Cir. 2004) stated the

following:

> "Whether trademark protection extends to a proposed mark is tied
> to the mark's distinctiveness.  See Sara Lee, 81 F.3d at 464.  In
> determining the distinctiveness of a given mark, courts use a
> categorical approach, placing the mark in one of four classifications
> that increase in distinctiveness as follows: generic, descriptive,
> suggestive, and arbitrary or fanciful.  See Pizzeria Uno Corp. v.
> Temple, 747 F.2d 1522, 1527, 224 USPQ 185 (4th Cir. 1984).  On
> the opposite end of the spectrum from the generic category are marks
> that are fanciful or arbitrary - inherently distinctive marks.  Fanciful
> marks are, for the most part, nonsense 'words expressly coined for
> serving as a trademark.'  Sara Lee, 81 F.3d at 464 (offering 'Clorox®,
> Kodak®, Polaroid®, and Exxon®' as examples).  Arbitrary marks
> consist of recognizable words used in connection with products for
> which 'they do not suggest or describe any quality, ingredient, or
> characteristic,' as if the trademark was 'arbitrarily assigned.'  Id.
> (citing 'Camel® cigarettes' and 'Apple® computers' as examples). ...
>
> In contrast to descriptive marks, suggestive marks are inherently
> distinctive and, like arbitrary or fanciful marks, qualify for registration
> without any showing of 'secondary meaning.'  See Pizzeria Uno, 747
> F.2d at 1529.  A mark is suggestive if it 'connote[s], without describing,
> some quality, ingredient, or characteristic of the product.'  Sara Lee,
> 81 F.3d at 464 (providing the following examples: 'Coppertone®,
> Orange Crush®, and Playboy®').  A helpful rule of thumb is that
> 'if the mark imparts information directly, it is descriptive,' but
> ''[i]f it stands for an idea which requires some operation of the
> imagination to connect it with the goods, it is suggestive.''
> Pizzeria Uno, 747 F.2d at 1528 (quoting Union Carbide Corp. v.
> Ever-Ready, Inc., 531 F.2d 366, 379, 188 USPQ 623 (7th Cir. 1976))."

Where the USPTO has registered a mark on the Principal Register without requiring

proof of secondary meaning, that action provides *prima facie* evidence that the mark is

suggestive.  *Pizzeria Uno*, 747 F2d at 1529; *Lone Star Steakhouse & Saloon*, 43 F3d at 934.

*Synergistic Int'l, LLC v. Korman*, 470 F3d 162, 172 (4th Cir. 2006).  The presumption of

suggestiveness may be rebutted either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration.  *Pizzeria Uno*, 747 F2d at 1529. Registration under these circumstances provides the registrant a strong presumption of the validity of the mark and shifts the burden to Defendant to rebut Plaintiff's presumptive right to exclusive use by a preponderance of the evidence.  *Id.*  Here, no counterclaim has been filed by Defendant.  Defendant's alleged affirmative defenses are discussed below.

Plaintiff's mark was registered on the Principal Register without any requirement to provide proof of secondary meaning.  See Exh 2 (file history).  As such, the registration carries with it *prima facie* evidence that the mark "SPIEGELAW.COM" is suggestive.  *Pizzeria Uno*.

Accordingly, Plaintiff is entitled to moderate to strong protection for the mark "SPIEGELAW.COM" and factor (1) weighs in favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.  Additionally, stronger marks are given more protection from infringement than are weaker marks.  See *Louis Vuitton Malletier S.A. v. Haute Diggity Dog LLC*, 507 F3d at 261-262.

(ii)   Factor (2) - the similarity of the two marks.

As set forth by the Court in *Lone Star Steakhouse & Saloon Inc. v. Alpha of Virginia Inc.*, 43 F3d 922, 936, 33 USPQ 2d 1481, 1492 (4th Cir. 1995):

> "[I]n evaluating the similarity of two marks, this Court has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks. *Pizzeria Uno*, 747 F.2d at 1529-30, 1534-35. ... These factors directly parallel our reasoning in *Pizzeria Uno*, in which we found that 'Taco Uno' was confusingly similar to 'Pizzeria Uno' in the restaurant field.  Id. at 1534-36."

13

The identity of the dominant term in both marks is a strong indicator of that similarity in appearance and sound which would result in confusion.   ... All of this points to the manifest conclusion that there may well be such similarity of mark as to give rise to a likelihood of confusion between the two.  *Pizzeria Uno*, 747 F2d at 1534.

Defendant's mark "SPIEGELLAW.COM" only differs from Plaintiff's mark "SPIEGELAW.COM" in that Defendant's mark has an extra "L".  As such, Plaintiff's mark and Defendant's mark are virtually identical in appearance and are pronounced the same and sound the same when spoken.  Comparison for similarities in sound, sight and meaning is the standard way of determining similarity of respective marks.  See, in this regard, *Plough, Inc. v. Kreis Laboratories*, 314 F2d 635 (9th Cir. 1963); *Watkins Products, Inc. v. Sunway Fruit Products, Inc.*, 311 F2d 496 (7th Cir. 1962); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F2d 669 (Fed. Cir. 1984).  As such, it is submitted that factor (2) weighs heavily in favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.

(iii)   Factor (3):   the similarity of the goods or services the marks identify.

As described by the Court in *Pizzeria Uno*, 747 F2d at 1535:

> "A third factor considered by the district court under the formula for finding likelihood of confusion was similarity of services and facilities.  In that connection, it is obvious that the products and services provided by the two companies serve the same purpose.  One offers Italian cuisine, and full bar, in a sit-down restaurant.  The other offers drive-through and counter service for Mexican fast food.  In *Clinton*, 302 F.2d at 748, 133 USPQ at 523, the court found that the two products in question, car detergent and dish detergent, although intended for different purposes, could be used for the same purpose, and that the purposes were related.  Since the goods were also sold through the same retail outlets to the same customers, the court found that the goods were similar."

14

Services are related if consumers are likely to believe that, because of the similarity of the marks, the alleged infringer's services are somehow connected with, or sponsored by, the senior user.  See *IDV North America, Inc. v. S&M Brands, Inc.*, 26 F.Supp. 2d 815, 826 (E.D. Va 1998), citing *3 Thomas J. McCarthy, Trademarks & Unfair Competition § 24:24* (4th Ed. 1996).

Here, the marks are virtually identical and the respective services rendered by Defendant and Plaintiff have significant overlap.  In Plaintiff's registration, the services rendered are stated as "legal services; providing information at the specific request of end-users by means of telephone or global computer networks."  There is no limitation in Plaintiff's registration as to the specific types of  legal services to be rendered.  Plaintiff's registration covers all legal services rendered under the mark "SPIEGELAW.COM."  Defendant's website (Exh 6) clearly promotes legal services to be rendered by Defendant.  The first two sentences of the front page of that website state the following:

> "Welcome to the home page of the law practice of Steven M. Spiegel.  This practice provides legal representation to federal and private sector employees in disability and discriminaton [sic] matters."

On a later page headed "Firm Profile," Defendant's website describes the following services:

> "The firm is also available for environmental and <u>general practice matters</u>."

(Emphasis supplied.)

According to Defendant's sworn testimony, there is a significant overlap between intellectual property law on the one hand (the primary practice area of Plaintiff) and the areas of employment law and environmental law (the primary practice areas of Defendant).  In particular, during that testimony, Defendant testified that employment lawyers often deal with agreements

15

that include aspects of intellectual property law.  In particular, some such agreements involve clauses dealing with who owns inventions conceived by employees.  See Exh 7, Spiegel Dep. at 48:22-49:4.  Moreover, Defendant testified concerning treatises in the employment law field dealing with intellectual property law issues such as those concerning employee owned inventions.  See Exh 8 and Exh 7, Spiegel Dep. at 53:16-54:4.  There is also an overlap between environmental law and intellectual property law, Defendant testifying that he had once prepared a paper demonstrating that overlap.  Spiegel Dep. at 53:21-54:4.

Additionally, Defendant testified that he is a member of professional organizations to which employment lawyers belong including the National Employment Lawyers Association (NELA) and the Metropolitan Washington Employment Lawyers Association (MWELA).  Spiegel Dep. at 46:16-47:7.  Defendant testified that were he to have a client who needed him to interpret an employment agreement involving a provision concerning employee conceived inventions, he possibly would refer that matter to a contact member of NELA or MWELA.  Spiegel Dep. at 49:5-20.  When specifically asked if he might refer such a matter to Plaintiff, he would not give a definitive reply.  Spiegel Dep. at 50:9-51:11.

Clearly, the website accessed at WWW.SPIEGELLAW.COM promotes legal services rendered by Defendant.  Thus, given the overlap to which Defendant testified under oath, the legal services promoted by Defendant under the domain name "SPIEGELLAW.COM" are at least similar to the legal services promoted by Plaintiff under the registered Service Mark "SPIEGELAW.COM."  As such, factor (3) weighs in favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.

16

(iv)   Factor (4):   the similarity of the facilities the two parties use in their businesses.

As set forth by the Fourth Circuit in *Lone Star Steakhouse & Saloon Inc. v. Alpha of Virginia, Inc.*, 43 F3d 922, 937 (4th Cir. 1995), the similarity of the facilities relates to the location of the facility at which the services will be provided.  In *Lone Star Steakhouse*, the Court noted that:

> "Both Lone Star Steakhouse's restaurants and Alpha's Lone Star
> Grill have sit-down restaurants with full bar service, cater to the
> same customers, and have overlapping items on their menus.
> These similarities, especially the fact that their restaurant services
> attract many of the same customers, further work to satisfy the
> fourth factor, the similarity of the facilities the two parties use in
> their businesses to sell their product or service.  See *Philip Morris
> v. MidWest Tobacco Inc.*, 9 U.S.P.Q. 2d 1210, 1214 (E.D. Va. 1988)."

In the context of procurement of services, both Plaintiff and Defendant promote their services on Internet web pages.  Each party has an office where the services are performed, Plaintiff in the Alexandria section of Fairfax County, Virginia, and Defendant within Alexandria City.  Both Plaintiff and Defendant cater to customers who require legal services to be performed.  Although, generally speaking, the legal services performed by Plaintiff are in a different area of law than those performed by Defendant (intellectual property law v. employment law), neither party is foreclosed from providing legal services in areas of the law that overlap, and as explained above, Defendant has conceded an overlap between the respective areas of practice of Plaintiff and Defendant.  Again, as explained above, Plaintiff's Certificate of Registration provides no limitation on the types of legal services that may be performed under the registered Service Mark.  Accordingly, factor (4) weighs in favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.

17

(v)   Factor (5):   the similarity of the advertising used by the two parties.

In fact, there is a significant overlap in the manners of use of advertising by Plaintiff and Defendant.  Both parties use an Internet website to promote the rendering of their legal services. Both parties are geographically located in Northern Virginia close to Washington, D.C.  Taking all of these factors into account, it is submitted that factor (5) strongly weighs in favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.

(vi)   Factor (6):   the defendant's intent.

In *Pizzeria Uno*, the Fourth Circuit stated that where there is an intent to cause confusion, such intent "is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion.  *See, e.g., Holiday Inns, Inc. v. Holiday Inns*, 177 USPQ 640, 646-47 (D.C.S.C. 1973)."  224 USPQ at 194.  At the same time, the lack of intent is not a defense, even where there is a good faith belief that a subsequently-adopted mark will not lead to confusion.  *Id. citing Best & Co. v. Miller*, 167 F.2d 374, 377, 77 USPQ 133, 135-36 (2d Cir. 1948), *cert. denied*, 335 U.S. 818.

To demonstrate Defendant's intent to cause confusion, one need only review Exhs 18 and 19, the correspondence between Plaintiff and Defendant.  In response to Defendant's allegation that Plaintiff's registration and use of the mark "SPIEGELAW.COM" precludes Defendant from "using my own name in the practice of law and the domain name for my site" (Defendant's letter of August 7, 2008), Plaintiff replied the very next day after having visited the Network Solutions website and determined that at least four separate domain names were available to be reserved and used by Defendant, all of which incorporated his name.  See Plaintiff's letter of August 8,

18

2008.  Subsequently, and to date, Defendant continues to use the mark "SPIEGELLAW.COM" to facilitate access to the website he uses to promote the legal services he renders in Alexandria, Virginia.  Also, Defendant testified that he was aware of Plaintiff's website well in advance of when he placed his on the Internet.  See Exh 21, Defendant's responses to Interrogatories, Interrogatory No. 1, and Exh 7, Spiegel Dep. at 19:9-17.  It is submitted that Defendant's continuing use of his mark in the face of direct knowledge of Plaintiff's superior rights as well as direct knowledge that he could easily change his domain name to a name more closely related to his own first name and surname, but refuses to do so, weighs this factor heavily in favor of Plaintiff.

(vii)   Factor (7):   actual confusion.

In general, evidence of actual confusion is deemed highly persuasive in finding a likelihood of confusion.  Thus, while the owner of a mark need not show actual confusion to prove likelihood of confusion and therefore trademark infringement, "the presence of actual confusion can be persuasive evidence relating to a likelihood of confusion."  *Louis Vuitton*, 507 F3d 252, 263, 84 USPQ 2d 1969, 1976.  See also *CareFirst*, 434 F.3d at 268; *Philip Morris Inc. v. MidWest Tobacco Inc.*, 9 USPQ 2d 1210 (ED VA 1988) (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1186, 189 USPQ 392, 397 (4th Cir. 1976)).  See also *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006)("evidence of actual confusion is 'often paramount' in the likelihood-of-confusion analysis") (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804, 58 USPQ 2d 1102 (4th Cir. 2001)).  Absence of actual confusion does not lead to a finding of no likelihood of confusion.  It is well settled that the relevant test is likelihood of confusion, not actual confusion.  It is unnecessary to show actual confusion to establish

19

likelihood of confusion.  *Weiss Associates Inc. v. HRL Associates Inc.*, 902 F2d 1546, 1549, 14

USPQ 2d 1840, 1842-3 (Fed. Cir. 1990).  See also *Giant Food, Inc. v. Nation's Foodservice,*

*Inc.*, 710 F2d 1565, 1571 (Fed. Cir. 1983).

Here, evidence exists of at least one instance of actual confusion.  As set forth in the

statement of facts above, in July of 2008, Plaintiff first became aware of the existence of

Defendant's website when a third party Counsel representing a client engaged in a dispute with a

client of Plaintiff sent Plaintiff an e-mail for which a copy was noted to Defendant at Defendant's

web address.  See Exh 9 consisting of a redacted copy of the e-mail received by Plaintiff in July

of 2008.

While Plaintiff would not characterize a single misdirected communication as

overwhelming evidence of actual confusion, that e-mail does demonstrate that there is at least

one instance of actual confusion in existence.  Therefore, factor (7) weighs at least slightly in

favor of Plaintiff for the purpose of demonstrating a likelihood of confusion.

It is submitted that in light of the above analysis, there is a likelihood of confusion

between Plaintiff's use of its registered Service Mark "SPIEGELAW.COM" and Defendant's

unauthorized use of the service mark "SPIEGELAW.COM" to facilitate access to his website

promoting services legally the same as those for which Plaintiff has (1) obtained federal

registration and (2) demonstrated actual continuous use in interstate commerce.

### 4.   Defendant's Alleged Defenses

Evidence of registration of a mark on the Principal Register owned by a party to a Civil

Action is admissible in evidence and is *prima facie* evidence of the validity of the registered

mark and of the registration of the mark and of the registrant's ownership of the mark and of the

registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the Certificate of Registration subject to any conditions or limitations stated therein.  Section 33(a), Lanham Act, 15 U.S.C. § 1115(a).  However, one charged with infringement of a federally registered mark may interpose any one or more of a number of defenses including the following:

(a)   That the registration was obtained fraudulently;

(b)   That the mark has been abandoned by the registrant;

(c)   That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used;

(d)   That use of the name, term or device charged to be an infringement is a use:

    i)   otherwise than as a mark;

    ii)   of the party's individual name in his own business;

    iii)   of the individual name of anyone in privity with such party; or

    iv)   of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party or their geographic origin;

(e)   That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use;

(f)   That the mark whose use is charged as an infringement was registered and used prior to the registration and use of the mark asserted by the accuser;

(g)   That the registered mark has been or is being used to violate the Anti-Trust Laws of the United States;

21

(h)   That equitable principles including laches, estoppel and acquiescense are applicable. Section 33(b), Lanham Act, 15 U.S.C. § 1115(b).[4]

Reference is made to Exh 11, Defendant's responses to document requests.  Reference is also made to Exh 21 consisting of all documents produced by Defendant, and to Exh 16 consisting of all documents produced by Defendant's sister, Lisa S. Spiegel, pursuant to subpoena.  Reference is also made to Exh 7 consisting of pertinent pages of the Transcript of the Deposition of Defendant.  Looking at all of the potential defenses listed above and using the same lettering set forth above, the following is noted:

(a)   Document Request No. 25 requested of Defendant "Any and all documents evidencing that Plaintiff's federal registration of the mark SPIEGELAW.COM was obtained fraudulently."  Defendant responded: "Defendant has no documents responsive to this request at this time."  As such, Defendant has no basis for asserting that the registration of Plaintiff's mark was obtained fraudulently.

(b)   Document Request No. 26 requested that Defendant produce "Any and all documents evidencing that Plaintiff has abandoned the mark SPIEGELAW.COM."  Defendant responded: "Defendant has no documents responsive to this request at this time."  Thus, Defendant has no basis to assert the defense of abandonment.

(c)   Document Request No. 27 requested that Defendant produce "Any and all documents evidencing that Plaintiff is using the registered mark SPIEGELAW.COM in a manner that misrepresents the source of the services, in connection with which the mark is used."

---

[4]  15 U.S.C. 1115(b) also mentions the defense that the mark "is functional."  This defense is not applicable in this case.

22

Defendant responded:   "Defendant has no documents responsive to this request at this time."  As such, Defendant has no basis to assert the defense of misrepresentation of the source of the services.

(d)  i)   Defendant has clearly asserted that the use of the domain name SPIEGELLAW.COM to facilitate access to his website is service mark use.  See Exh 7, Spiegel Dep. at 81:14-82:4.  Moreover, Defendant's use of his domain name to facilitate access to his website is the precise manner of use employed by Plaintiff to facilitate access to Plaintiff's website.  That use was recognized by the U.S. Patent and Trademark Office as appropriate for the grant of federal service mark registration.  Accordingly, there can be no doubt that Defendant may not assert the defense that use of his domain name to access his website is a use other than as a mark.

ii)   During the course of his deposition, Defendant's sworn testimony was that his last name is not "Spiegellaw."  Nor is it Spiegellaw.com.  Spiegel Dep.at 77:5-12.  As such, the defense that Defendant is merely using his individual name in his own business rather than infringing Plaintiff's mark may not be asserted.

iii)   There is no evidence in this case that use of the mark SPIEGELLAW.COM is actually use of the individual name of anyone in privity with Defendant.  Accordingly, this defense is not available to Defendant.

iv)   As explained above, the USPTO registered Plaintiff's mark on the Principal Register without any requirement that evidence of secondary meaning be provided.  As a matter of law, as cited above, this provides *prima facie* evidence that Plaintiff's mark is suggestive. This evidence mitigates against a finding by the Court that Defendant's use of their mark, which

23

only differs from Plaintiff's mark through the addition of a single letter "L" could be deemed descriptive. The issue of geographic origin is not relevant to this Civil Action.

(e) The evidence is clear that Defendant was aware of Plaintiff's service mark used to gain access to Plaintiff's website at the time Defendant began using the mark SPIEGELLAW.COM to facilitate access to his website. In this regard, reference is made to Defendant's response to Interrogatory No. 1 (Exh 21, Spiegel Dec.): "Please state the date on which you were first aware that Plaintiff operates a website accessible via the domain name SPIEGELAW.COM." Response: "July 11, 2007." Also of note is Defendant's response to Interrogatory No. 2: "Please state the first date on which a website accessible at [WWW.SPIEGELLAW.COM](WWW.SPIEGELLAW.COM) was made accessible to the public by Defendant." Response: "A website has been accessible since 1999. A different version of the website was accessible to the public since at least March 24, 2004. The current version of the website, subject to revisions, has been accessible to the public since on or about March 2, 2008." Thus, when Defendant made his website accessible to the public via the mark SPIEGELLAW.COM on March 2, 2008, he had been actually aware of the existence of Plaintiff's website accessible via Plaintiff's service mark SPIEGELAW.COM for almost 8 months.

(f) There is no evidence that Defendant has ever sought or obtained registration of Defendant's mark.

(g) Reference is made to Exh 11, Spiegel Dep., Request for Production of Documents No. 29 which reads as follows: "Any and all documents evidencing that Plaintiff's use of the mark SPIEGELAW.COM is in violation of the Anti-Trust Laws of the United States. Defendant responded: "Defendant has no documents responsive to this request at this time." As such,

Defendant is unable to interpose this defense.

(h)   Equitable defenses of laches, estoppel and acquiescence are also available to be asserted by Defendant.  Looking at Defendant's answer, the third defense interposed is the defense of laches.  In making that third defense, on page 4 of the Answer, Defendant stated the following:

> "The plaintiff's claims are barred by the doctrine of laches.  The plaintiff has been aware of the use of the domain name SPIEGELLAW.COM for the practice of law for over 8 years."

Plaintiff's Document Request No. 17 requested  "All documents supporting the third defense included in Defendant's Answer."  In responding, Defendant made reference to documents described as "Attachment 1, Attachment 17, and Defendant's Exhibits 1, 3, 5 and 8, as well as Plaintiff's Exhibits 4 and 5."  These Defendant's and Plaintiff's Exhibits were referring to Exhibits provided the Court in the briefing of the earlier Motion for Preliminary Injunction.  Plaintiff is unsure which documents are being referred to by those identifiers of "Attachments."  However, since Defendant only produced a total of 33 pages of documents in response to Plaintiff's 34 document requests, all of those documents are included as Exh 20.  Those documents have been Bates numbered by Defendant beginning with number SMS000001 and ending at SMS000033.  Looking at these documents, none of them establishes the defense of laches.  Document Nos. SMS000001-2 are photocopies of a WHOIS search result from Network Solutions evidencing the original date the record for SPIEGELLAW.COM was created on March 17, 1999.  Plaintiff knows of no case law supporting that registration of a domain name with nothing further creates trademark use.  Document Nos. SMS000003-5 are irrelevant to this inquiry.  Document Nos. SMS000006-7 appear to be the same or similar as documents

25

SMS000001-2 and are similarly irrelevant to the issue of service mark use.  Document No. SMS000008 is dated June 22, 2007 and appears to show ownership of the domain name SPIEGELLAW.COM by Defendant.  This document provides no evidence of use of the domain name SPIEGELLAW.COM as a service mark.  Document Nos. SMS000009-14 are irrelevant to the issue of service mark use.

Document Nos. SMS000015-18 consist of a Registrant Name Change Agreement dated August 15, 2007, and providing no evidence of use of the domain name SPIEGELLAW.COM as a service mark.  Document Nos. SMS000019-21 have no bearing on Defendant's potential defenses.

Document Nos. SMS000022-26 appear to establish Defendant as owner of the domain name SPIEGELLAW.COM, but do nothing to demonstrate service mark use.  Document Nos. SMS000027-33 include a copy of a letter from Defendant to Plaintiff (page nos. 27-29, and other documents, none of which are pertinent to the question of use of the domain name SPIEGELLAW.COM as a service mark.

Looking at the 33 pages of documents Bates stamped by Defendant, they do not appear to encompass all of the documents employed by Defendant in defending this Civil Action.  Some of the Exhibits to Defendant's Opposition to the Earlier Filed Motion for Preliminary Injunction are not included in those documents produced.  For ease of understanding by the Court, Plaintiff notes that Defendant has made mention of Exhibits 1, 3, 5 and 8 attached to their Opposition to Plaintiff's Motion for Preliminary Injunction.  Those documents are collectively identified as Exh 22, Spiegel Dec.  Exhibit 1 appears to be evidence of Defendant's sister's initial registration of the domain name SPIEGELLAW.COM with Network Solutions, as earlier discussed.  Exhibit

3 appears to be a page that was apparently able to be accessed on March 24, 2004 when the

domain name SPIEGELLAW.COM was used to access the Internet.  The Internet Archive page,

if it provides any evidence for Defendant, only provides evidence that on March 24, 2004, the

page identified as Exhibit 3 to Defendant's Opposition to the Motion for Preliminary Injunction

(Exh 22) was accessible on the Internet when Defendant's domain name SPIEGELLAW.COM

was used to access the Internet.  Defendant has produced no further evidence to facilitate making

any determination whatsoever as to whether the page identified as Exhibit 3 to Defendant's

Opposition to Plaintiff's Motion for Preliminary Injunction was available on the Internet solely

on that day, for any other day or for what period.  Moreover, the documents produced by Lisa S.

Spiegel under subpoena provide no further indication in that regard.  Those documents, produced

by Lisa S. Spiegel under subpoena, were 26 in number and comprise Exh 16, and are numbered

by Bates Nos. LSS-001 - 026.  Looking at those documents, none of them corresponds to

Defendant's Exhibit 3 in Opposition to Plaintiff's Motion for Preliminary Injunction.  The only

documents evidencing access to any page responsive to entry of the domain name

SPIEGELLAW.COM in the Internet consist of those identified by Bates Nos. LSS-013-014, and

LSS-017-018.  Each of these documents consists of a page headed "Welcome to

WWW.SPIEGELLAW.COM Home Page" with a picture of a construction helmet on the right

side and the words "Under Construction."  These pages fail to advertise or promote any legal

services whatsoever.

Thus, before Defendant obtained the domain name SPIEGELLAW.COM in 2007, and

began using it as a service mark to gain access to his website in March, 2008, there is utterly no

evidence whatsoever of use of the domain name SPIEGELLAW.COM as a service mark to

facilitate access to a website advertising and promoting legal services, or for any other service mark use whatsoever.  Thus, the defense of laches is unavailable to Defendant.

Moreover, even if that defense were conceivable, estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion.  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F3d 455, 461 (4th Cir. 1996); Black & Decker Inc. v. Pro-Tech Power Inc., 26 F.Supp. 2d 834, 853 (E.D. Va. 1998).  Stated another way, strong proof of a likelihood of confusion trumps the defense of laches.  *Id.*

Similarly, Defendant has no evidence to support the defense of estoppel.  For Defendant to establish the defense of "estoppel," Defendant would have to show that Plaintiff is prevented by his own acts from claiming a right to the detriment of Defendant who was entitled to rely upon such conduct and has acted accordingly.  In this case, the evidence is clear that service mark use of SPIEGELLAW.COM to promote legal services did not commence until Defendant obtained the domain name SPIEGELLAW.COM from his sister, Lisa S. Spiegel, and established a website accessible through that domain name in March 2008.  Looking at the documents produced under subpoena by Lisa S. Spiegel, attention is directed to the letter from Plaintiff to Lisa Spiegel on February 24, 2000, identified as Bates No. LSS-020.  In that letter, Plaintiff brought to the attention of Ms. Spiegel that use of SPIEGELLAW.COM would create a likelihood of confusion if used to access a website.  In the handwritten notation from Ms. Spiegel dated March 2000, she memorialized a telephone conversation with Plaintiff in which she explained that use of that domain name would only be for an e-mail server, "not a website," and that such use was acceptable to Plaintiff.

28

Plaintiff submits that use of an e-mail server, for example,

LISASPIEGEL@SPIEGELLAW.COM is not service mark use.  When a person sent an e-mail to

Lisa Spiegel at an e-mail address such as LISASPIEGEL@SPIEGELLAW.COM, that act did not

facilitate access to a web page advertising and promoting legal services.  It merely provided a

means to communicate with Lisa Spiegel on any manner of subjects.  To the best of Plaintiff's

knowledge, and that knowledge is not rebutted by any documents produced during the course of

this litigation, Lisa Spiegel never used the domain name SPIEGELLAW.COM as a service mark

to facilitate access to a website advertising and promoting her legal services.  Thus, again, prior

to Defendant's acquisition of that domain name and his use of it as a service mark to facilitate

access to a website, there was no service mark use.  As such, there was no estoppel.

For the same reasons, there was no acquiescence.  The remarks set forth above

concerning laches and estoppel are equally applicable here.  Defendant has no proof Plaintiff

actively consented to Defendant's use of the mark SPIEGELLAW.COM.  *Sara Lee Corp.*, 81

F3d at 462.  In fact, as soon as Defendant's use was discovered by Plaintiff, Plaintiff demanded

Defendant cease and desist, Exh 18.  Moreover, for the same reasons there was no "waiver" as

Defendant has asserted as a Fifth Defense.  Defendant has developed absolutely no evidence that

Plaintiff waived any rights Plaintiff could have asserted against Defendant or his predecessor in

interest. Lisa S. Spiegel.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff has established entitlement to a grant of

summary judgment on the three counts in Plaintiff's Complaint.  Plaintiff has established that

there is no issue of fact that (1) Plaintiff has a valid and protectable mark; (2) Defendant is using

the virtually identical mark SPIEGELLAW.COM; and (3) there is a likelihood of confusion

between Plaintiff's federally registered service mark SPIEGELAW.COM and Defendant's use of

the domain name SPIEGELLAW.COM as a service mark to facilitate access to his website,

Plaintiff has also established that Defendant can interpose no possible defenses to that finding.

Accordingly, Plaintiff respectfully requests that the Court enter summary judgment in favor of

Plaintiff and against Defendant.

Respectfully submitted,

H. JAY SPIEGEL & ASSOCIATES

/s/

H. JAY SPIEGEL
Attorney for Plaintiff H. Jay Spiegel
    & Associates, P.C.
Virginia Bar No. 20647


H. JAY SPIEGEL & ASSOCIATES
P.O. Box 11
Mount Vernon, VA  22121
(703) 619-0101 - Phone
(703) 619-0110 - Facsimile
jayspiegel@aol.com - e-mail

<u>**CERTIFICATE OF SERVICE**</u>

     I, H. Jay Spiegel, hereby certify that on April 15, 2009, I served the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** on Defendant, Steven M. Spiegel, via electronic transmission to his e-mail address sspiegelesq@verizon.net.


Date:    <u>  April 15, 2009</u>


                                                   /s/

                                      H. Jay Spiegel
                                    Attorney for Plaintiff H. Jay Spiegel
                                        & Associates, P.C.
                                    Virginia Bar No. 20647


H. JAY SPIEGEL & ASSOCIATES
P.O. Box 11
Mount Vernon, VA  22121
(703) 619-0101 - Phone
(703) 619-0110 - Facsimile
jayspiegel@aol.com - e-mail

31