IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| H. JAY SPIEGEL & ASSOCIATES, P.C., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08cv949 (JCC) |
| | ) | |
| STEVEN M. SPIEGEL, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on the parties'
cross-motions for summary judgment.  For the reasons stated
below, the Court will deny Plaintiff's motion for summary
judgment and deny Defendant's motion for summary judgment.  As
further explained *infra* at subpart III.C, the Court finds that
each party has failed to put forward sufficient evidence to
receive the relief it requests.  The Court will leave the parties
as they stand.

### I.  Background

This case arises out of Defendant Steven M. Spiegel's
("Defendant's") alleged infringement of Plaintiff H. Jay Spiegel
& Associates, P.C.'s ("Plaintiff's") trademark.  On September 12,
2008, Plaintiff filed a complaint containing claims for federal
trademark infringement, federal unfair competition, and trademark

1

infringement and unfair competition under Virginia common law (the "Complaint").  The undisputed facts are as follows.

A. <u>Plaintiff's Mark</u>

Plaintiff, a law practice organized as a Virginia professional corporation, has operated continuously under its name since 1989.  Plaintiff provides patent and trademark-related legal services.[1]  In January 1999, Plaintiff registered the domain name SPIEGELAW.COM (Plaintiff's "mark" or "domain name") with Network Solutions.  By February 23, 2000, Plaintiff had established a website accessible using the web address WWW.SPIEGELAW.COM.  On February 24, 2000, Plaintiff filed an application for federal registration of the domain name as a service mark for the provision of legal services.  The United States Patent and Trademark Office ("USPTO") denied the application because it determined that the mark was primarily a surname and thus not legally qualified to be registered on the Principal Register.

Plaintiff subsequently applied to have the domain name placed on the Supplemental Register; the USPTO placed the mark on the Supplemental Register on November 7, 2000.  On November 19, 2005, Plaintiff submitted a second application to register the domain name on the Principal Register.  The application was

---

[1] Plaintiff is represented by its principal, H. Jay Spiegel.  Defendant represents himself.

assigned a serial number and, on October 17, 2006, the USPTO entered the domain name on the Principal Register as Registration No. 3,158,285.

B. <u>Defendant's Mark</u>

In March 1999, Lisa M. Spiegel, an attorney who is Defendant's sister, registered the domain name SPIEGELLAW.COM (Defendant's "mark" or "domain name") with Network Solutions. She used the domain name primarily for e-mail purposes. Plaintiff was aware of Lisa M. Spiegel's use of the domain name in some capacity before it filed the February 24, 2000 registration application.  (Def.'s Ex. 15.)  Plaintiff also knew that there was an inactive website in place at SPIEGELLAW.COM. On February 24, 2000, Plaintiff sent Lisa M. Spiegel a letter asking her to stop using the domain name SPIEGELLAW.COM.  (Def.'s Ex. 16.)  A hand-written notation by Lisa M. Spiegel indicates that Plaintiff's counsel and Ms. Spiegel spoke and came to an arrangement whereby Plaintiff did not object to Ms. Spiegel's use of the domain name for e-mail purposes so long as it was not used to host a website.  (Def.'s Ex. 16.)

On January 10, 2001, Plaintiff sent Lisa M. Spiegel another letter to inform her that the USPTO had entered Plaintiff's mark on the Supplemental Register.  Plaintiff's letter stated that, "so long as your practice is limited to immigration matters and my practice is mainly directed to

Intellectual Property Law matters, I am confident that we can co-exist with our current domain names," but Plaintiff also demanded that Lisa M. Spiegel sign a licensing agreement in order to protect its rights in Plaintiff's mark.  She did not sign a licensing agreement.  Sometime prior to March 2, 2008, she transferred the domain name SPIEGELLAW.COM to Defendant.  On March 2, 2008, Defendant posted a live website at WWW.SPIEGELLAW.COM.  He was aware of Plaintiff's website before he did so.

Defendant is a sole practitioner with a focus on employment law.  Defendant uses his website, in part, to facilitate a class action lawsuit and maintain contact with class members.  Plaintiff became aware of Defendant's website in July 2008, when an opposing lawyer sent Plaintiff an e-mail copied to Defendant using an e-mail address incorporating Defendant's domain name.  Upon discovering Defendant's website, Plaintiff sent Defendant a letter demanding removal of the site from the Internet and asking Defendant to convey his domain name to Plaintiff.  Defendant refused to do so.  Plaintiff then filed this suit.  The complaint states claims for federal trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a) (Count I), federal unfair competition in violation of 15 U.S.C. § 1125(a) (Count II), and trademark infringement and unfair competition under Virginia common law (Count III).  The claims

4

are essentially duplicative: "[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law." *Lone Star Steakhouse & Saloon Inc.* v. Alpha of Virginia, Inc., 43 F.3d 922, 930 n.10 (4th Cir. 1995) (citations omitted).  For this reason, the Court will perform a single infringement analysis below.

Plaintiff moved for a preliminary injunction on October 28, 2008.  This Court denied the motion on December 11, 2008. After discovery, the parties filed and briefed cross-motions for summary judgment according to a briefing schedule set by the Court.  Plaintiff filed its motion on April 15, 2009.  Defendant opposed the motion on June 12, 2009, and Plaintiff filed a reply brief on June 19, 2009.  Defendant filed his motion for summary judgment on May 22, 2009.  Plaintiff opposed the motion on June 12, 2009, and Defendant filed a reply brief on June 19, 2009. Defendant, in his summary judgment briefing, asserted that Plaintiff's mark was fraudulently registered and that it should be canceled.

At oral argument, Plaintiff's counsel represented to the Court that he seeks only injunctive relief, not monetary damages.  Hr'g Tr. June 30, 2009 8.  The Court informed him that injunctive relief is an equitable remedy which cannot be awarded by a jury.  Hr'g Tr. June 30, 2009 8.  Additionally, both parties

represented to the Court that they have no additional evidence to produce if the case were to go to trial.  Hr'g Tr. June 2009 30-31, 33.  Based on these representations, the Court found it appropriate to decide this case based on the record and the parties agreed.  Hr'g Tr. June 2009 37.  Thus, the Court removed the jury trial, scheduled to occur on July 14, 2009, from the Court's calendar.  Hr'g Tr. June 2009 37.  The cross-motions for summary judgement are before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party

6

opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).  A "mere scintilla" of evidence is insufficient to overcome summary judgment.  *Id.* at 248-52.  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

When faced with cross-motions for summary judgment, the standard is the same as that applied to individual motions for summary judgment.  The court must consider each party's motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  If the court finds that there is a genuine issue of material fact, both motions must be denied.  10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2720.  However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  *Id.*

7

## III. Analysis

A. <u>Plaintiff's Motion for Summary Judgment</u>

In order to show trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and trademark or service mark infringement under Virginia common law, a plaintiff must demonstrate: (1) ownership of a valid and protectable mark and (2) a likelihood of confusion stemming from an infringer's use of a colorable imitation of the trademark.  *See Lone Star Steakhouse & Saloon Inc.*, 43 F.3d at 930 n.10.

1. <u>Element (1): Valid and Protectable Mark</u>

Trademarks fall into one of four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *see Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 538-39 (4th Cir. 2004); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124-25 (4th Cir. 1990).  The categories are listed in ascending order of distinctiveness: because how much protection a mark receives depends on its distinctiveness, they are also listed in order of the amount of protection they receive, from least to most.  *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).  Generic marks do not merit any trademark protection, whereas arbitrary, fanciful, and suggestive marks merit the highest protection.  *Id. ; see also U.S. Search, LLC v. US Search.com Inc.*, 2002 U.S. App.

8

LEXIS 16590, at *10, 63 U.S.P.Q.2d (BNA) 2013 (4th Cir. Aug. 16, 2002).

Descriptive marks fall in the middle.  They "describe a function, use, characteristic, size, or intended purpose," are not inherently distinctive, and are protected only if they have acquired a "secondary meaning."  *See Retail Servs.*, 364 F.3d at 539.  Secondary meaning exists when, in the minds of the public, the primary significance of the term identifies the source of the product rather than the product itself.  *See Id.* (citations and quotations omitted).

Suggestive marks, in contrast to descriptive marks, are inherently distinctive.  *Id.*  They "connote, without describing, some quality, ingredient, or characteristic of the product . . . . they conjure images of the associated products."  *Sara Lee Corp.*, 81 F.3d at 464.  "[S]uggestive marks are inherently distinctive and, like arbitrary or fanciful marks, qualify for registration without any showing of 'secondary meaning.'"  *Retail Servs.*, 364 F.3d at 539 (citation omitted).  Fanciful marks are usually nonsense words expressly coined to serve as a trademark, while arbitrary marks "consist of recognizable words used in connection with products" with which they are otherwise un-associated.  *Id.*

In 2000, Plaintiff registered its mark on the Supplemental Register after the USPTO turned down its initial

application for registration on the Principal Register because the proposed mark was "primarily merely a surname."  15 U.S.C. § 1052(e)(4); *see* Pl.'s Ex. 14 1.  Earlier in this litigation, Plaintiff took the position that its second application for registration on the Principal Register was made through Lanham Act § 2(f), 15 U.S.C. § 1052(f), which allows the registration of marks that have acquired distinctiveness by virtue of their use in trade for five years.[2]  Pl.'s Prelim. Inj. Mem. 10-11. Plaintiff now claims that it gave this prior explanation in error and that, in fact, the 2005 application for inclusion on the Principal Register was filed under § 1(a) of the Lanham Act, 15 U.S.C. § 1051, which does not require a showing of acquired distinctiveness.  The undisputed evidence shows that the USPTO registered the mark on the Principal Register without requiring proof of secondary meaning.  Pl.'s Mem. in Supp. 7 n.3; Pl.'s Ex. 2.  Plaintiff argues that its registration of the mark on the Principal Register without the requirement that it prove secondary meaning provides *prima facie* evidence of suggestiveness that Defendant has not countered.

---

[2]  Section 2(f) states that, with some exceptions not directly applicable here, "nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."  15 U.S.C. § 1052(f).  Additionally, it allows the USPTO to "accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made."  *Id.*

Section 1115(a) states that the registration of a mark on the Principal Register constitutes *prima facie* evidence of (1) "the validity of the registered mark," (2) the "registration of the mark," (3) "the registrant's ownership of the mark," and (4) "the registrant's exclusive right to use the registered mark in commerce."  A party can still challenge a mark registered on the Principal Register because registration "shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered."  15 U.S.C. § 1115(a).

In *Pizzeria Uno Corp. v. Temple*, a seminal Fourth Circuit trademark decision, the court held that when the USPTO registers a mark without requiring proof of secondary meaning, the agency has concluded that the mark is suggestive, and courts must consider the USPTO's determination to be *prima facie* correct.  747 F.2d 1522, 1529 (4th Cir. 1984).  The *Pizzeria Uno* goes on to clarify that the presumption of validity "does not preclude one charged with infringement from 'collaterally attack[ing the mark] in an infringement action, either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration.'"  *Id.* (*citing*, *inter alia*, 15 U.S.C. § 1115(a); 1 Gilson on Trade Mark Protection and Practice § 4.04, at 4-33 (1984 ed.); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980)); *see Synergistic Int'l v.*

*Korman*, 470 F.3d 162, 172 (4th Cir. 2006) (explaining that the presumption of suggestiveness "can be rebutted by a party defending against an infringement claim").  Registration does, however, shift the burden of proof from the plaintiff to the defendant, "'who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such [exclusive] use.'"  *Id.* (*quoting Rovira Biscuit Corp.*, 624 F.2d at 373).

   a. Defendant Can Attempt to Rebut the Presumption
      of Suggestiveness

Plaintiff argues that *Pizzeria Uno* limits the avenues by which Defendant can challenge the validity of Plaintiff's mark to either an affirmative defense or a counterclaim.  Because Defendant has not explicitly raised an affirmative defense based on the invalidity of Plaintiff's mark or brought a counterclaim seeking to cancel the mark, Plaintiff argues Defendant cannot question the validity and protectability of the mark.

The Court disagrees.  First, the relevant quotation from *Pizzeria Uno* construes § 1115(a), which states that the defendant party shall not be precluded "from proving any legal or equitable defense *or defect . . . which might have been asserted if such mark had not been registered.*"  15 U.S.C. § 1115(a) (emphasis added).  The Court will not assume that the Fourth Circuit intended to impliedly pare away the plain language of § 1115(a), which allows a defendant in an infringement action to

12

show that the mark contains defects which should have prevented its registration in the first instance.

The *Pizzeria Uno* quotation focuses on when a litigant can collaterally attack a trademark – it does not, on its face, limit a party's means of defending itself from a charge of infringement. *Pizzeria Uno Corp.*, 747 F.2d at 1529. Additionally, the *Pizzeria Uno* quotation, looked at in context, appears to protect rather than limit the defendant party's rights. It states that the presumption of validity does not rule out the defendant party's right to collaterally attack the registration. *Id.* The remainder of the paragraph supports this reading. It explains that registration, and the ensuing presumption of validity, "do, for purposes of suit," shift the burden of proof from plaintiff to defendant, "who must introduce sufficient evidence to rebut the presumption of plaintiff's right" to exclusive use. *Id.* (internal quotation omitted).

In other words, the defendant party need only introduce evidence to rebut the presumption in plaintiff's favor; failure to raise an affirmative defense claiming the invalidity of the plaintiff's mark does not prevent the defendant from showing that the presumption of validity should not apply. The Fourth Circuit's subsequent holdings in *Synergistic Int., LLC*, 470 F.3d 162 and *George & Company, LLC v. Imagination Entertainment Ltd.*, No. 08-1921, slip op. at 10 (4th Cir. July 27, 2009), confirm

13

this view.   In *Synergistic Int'l LLC,* the court explained that
the presumption of suggestiveness that arises when the USPTO
registers a mark without requiring a showing of secondary meaning
"can be rebutted by a party defending against an infringement
claim."   470 F.3d at 172 (citation omitted).   In *George &
Company*, the court noted that the defendant in the infringement
action "had an opportunity in the district court to rebut the
presumption raised" by registration.   Slip op. at 13.

         In any event, Plaintiff's allegations about the manner
in which his mark was registered on the Principal Register -
pursuant to § 1(a) without proof of secondary meaning, rather
than pursuant to § 2(f) after five years of substantially
exclusive and continuous use in commerce - were revealed only
after the close of discovery and for the first time in
Plaintiff's motion for summary judgment.   Plaintiff's *Pizzeria
Uno*-based argument is directly tied to this new explanation of
the mark's registration.   Defendant gave notice in his Answer
that he would "rely upon such other and further defenses as may
become apparent during the course of this action."   Answer 4.
In these circumstances, it would be improper to deny Defendant
the opportunity to contest the validity of Plaintiff's mark when
new information about the details of the mark's registration only
became apparent during discovery.

In short, the USPTO's apparent acceptance of Plaintiff's mark as "suggestive" does not bar Defendant from arguing that the mark is not suggestive, and Plaintiff's attempt to use registration of the mark to foreclose such an argument is misplaced.  While Defendant bears the burden of proof, nothing forecloses him from proving that the mark is descriptive rather than suggestive.  Registration also does not bar Defendant from proving that the mark was improperly registered because it is primarily a surname.  If the USPTO mistakenly granted registration on the Principal Register, that mistake does not automatically hand the Plaintiff victory in this action.

        b.  <u>Whether the Mark is "Suggestive" or</u>
            <u>"Descriptive"</u>

One test for descriptiveness asks whether a person without actual knowledge of the services provided would have difficulty in determining their nature; if so, the mark is less likely to be descriptive.  *See Sara Lee Corp.*, 81 F.3d at 464.  Without secondary meaning, a merely descriptive mark is ineligible for protection.  *U.S. Search*, 2002 U.S. App. LEXIS 16590, at *19.  In this case, Defendant has pointed to sufficient evidence to allow a reasonable fact-finder to find for him on the issue of the protectability of Plaintiff's mark: the denial of Plaintiff's application in 2000 for the same mark for being primarily a surname, Plaintiff's revised statements about the

15

statute under which the mark was registered in 2005, and the simple fact that the mark is called "SPIEGELAW.COM," which appears to be made up of Plaintiff's surname and a term describing the nature of the services it provides.

Based on all the evidence, it appears that a reasonable fact-finder could find that Plaintiff's mark is descriptive rather than suggestive, and additionally, that secondary meaning has not attached, which would make Plaintiff's mark not subject to protection.

c. Whether the Mark is "Primarily Merely a Surname"

Defendant claims that the mark was improperly registered because it is "primarily merely a surname."  15 U.S.C. § 1052(e)(4) ("No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the Principal Register on account of its nature unless it — (e) Consists of a mark which . . . (4) is primarily merely a surname").  Whether a mark is "primarily merely a surname" depends on the "primary significance of the mark as a whole to the purchasing public."  *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554 (Fed. Cir. 1988).  When the mark is a composite mark — that is, one that consists of personal names and additional words — the inquiry looks to "what the purchasing

16

public would think when confronted with the mark as a whole." *Id.*

Defendant's argument is similar in some respects to that made by the defendant in *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337 (2d Cir. 1999), a case that involved the surname "Lane."  There, the plaintiff owned a mark that was registered on the Principal Register without proof of secondary meaning.  *Id.* at 345.  The court held that such registration created the presumption that the mark was inherently distinctive.  *Id.*  To "overcome the presumption that the purchasing public perceives the mark to be inherently distinctive," the defendant "had to produce evidence from which the fact-finder could reasonably find that the mark was primarily merely a surname."  *Id.* 345-46.  In this case, the Second Circuit found that the defendant's evidentiary submissions – including the fact that "Lane" is a common surname, that other people named "Lane" named businesses after themselves, and that such a practice is common in the financial industry – insufficient to create a triable issue of fact.  *Id.* at 347-48.

However, the court noted that in some cases, minimal evidence is sufficient to create a triable issue of fact.  *Id.* at 348.  For example, "if the only evidence [submitted] is the mark and the product, then the view of the purchasing public may be

17

divined . . . if one competing view is dominant enough to permit a reasonable conclusion by the preponderance [of the evidence] standard." *Id.* To illustrate, it cited *In re Rivera Watch*, 106 U.S.P.Q. 145, 149 (Comm'r Pat. 1955). *Rivera Watch* notes that names like "Reeves," "Higgins," and "Wayne" are primarily merely surnames whose status in the eyes of the purchasing public could not be doubted. 106 U.S.P.Q. at 149.

In other words, Defendant's failure to submit market research or other evidence directly probative of public perception does not automatically lead to a finding that Plaintiff's mark is not primarily merely a surname. Here, Defendant can point to the mark itself and to the market it serves – the legal services market – to legitimately contend that the mark is primarily merely a surname. The mark SPIEGELAW.COM, which sounds the same as SPIEGELLAW.COM, is a composite word that essentially combines a surname "Spiegel", a generic term "law", and a generic three-letter domain identifier ".com." A number of Trademark Board decisions indicate that the combination of a surname with descriptive or generic words will likely result in a composite word that is primarily merely a surname. 6 McCarthy on Trademarks and Unfair Competition § 13:31, n.10 (4th ed. updated June 2009) (*e.g.*, HAMILTON PHARMACEUTICALS held primarily merely a surname)(citations omitted).

18

Looking at the evidence in the light most favorable to Defendant, the Court believes that a reasonable fact-finder could find that the purchasing public would perceive SPIEGELAW.COM as primarily merely a surname referring to a Mr. or Mrs. Spiegel involved in the legal field.

Based on these reasons, Plaintiff is not entitled to summary judgment as to the validity of its mark.

### 2. Element (2): Likelihood of Confusion

Whether a likelihood of confusion exists is determined according to the factors outlined by the Fourth Circuit in *Pizzeria Uno Corp.,* 747 F.2d at 1527, with the addition of two factors contained in *Sara Lee Corp.*, 81 F.3d at 463-64. *See George & Co.*, slip op. at 10.  The factors are not all relevant in every case, and do not have to be weighted equally. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog LLC*, 507 F.3d 252, 259-60 (4th Cir. 2007).  The factors are: "(a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods/services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; [and] (g) actual confusion." *Pizzeria Uno Corp.*, 747 F.2d at 1527.  The two additional factors looked to in the Fourth Circuit are "the quality of the

19

defendant's product" and "the sophistication of the consuming public." *George & Co.*, slip op. at 10.  Out of these nine factors, the most important and significant factor is actual confusion.  *Id.* at 18, 21.

While the Fourth Circuit has noted that the likelihood of confusion question "is particularly amenable to resolution by a jury," *Anheuser-Busch, Inc. v. L & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992), "a trial court may [also] conclude, via summary judgment, that there is no need for a jury trial" on the likelihood of confusion.  *Johnson v. Sosebee*, 397 F. Supp. 2d 706, 708 (D.S.C. 2005) (citation omitted).

a. Strength of the Mark

Plaintiff argues that the Court should find that his mark is strong and distinctive based on the presumption of suggestiveness that follows registration under § 1(a).  Such a finding is unwarranted on that basis alone.  "A determination that the challenged mark is suggestive or descriptive is, of course, only the first step in an analysis of the likelihood of confusion issue.  After making the initial determination, a court is obliged to assess the strength or weakness of the mark." *Synergistic Int'l., LLC*, 470 F.3d at 173 (*citing CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006); *Pizzeria Uno*, 747 F.2d at 1530-31).  "The strength of a mark is

the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *CareFirst*, 434 F.3d at 269.  The inquiry into a trademark's validity is separate from the inquiry into the strength of the mark for likelihood of confusion purposes; even an incontestable mark may not be "strong."  *Id.* (citations omitted).  The strength of a mark "will depend on its recognition among members of the public." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632 (6th Cir. 2002).  In other words, even if the Court found that Plaintiff's mark was valid and that Defendant had not overcome the presumption of suggestiveness, the mark is not automatically considered to be strong.

Courts evaluate the "strength" of a mark in terms of its "conceptual strength" and its "commercial strength." *CareFirst*, 434 F.3d at 269 (citation omitted).  A mark's conceptual or inherent strength is determined by "the linguistic or graphical 'peculiarity' of the mark" considered relative to the "service . . . to which the mark attaches." *Id.* (*citing Perini Constr.*, 915 F.2d at 124).  Conceptual strength is determined in part by which distinctiveness category the mark falls into : (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *George & Co.*, slip op. at 10.  The inquiry into commercial strength is similar to the inquiry into

"secondary meaning" in considering a mark's validity.  *Id.* at 14

(*citing CareFirst*, 434 F.3d at 269 n.3); *see also Petro Stopping*

*Centers L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 93 (4th

Cir. 1997).  Proof of secondary meaning entails a rigorous

evidentiary standard:

> In *Perini*, we set forth six factors for a court to
> consider in assessing the acquisition of secondary
> meaning.  They are: (1) the plaintiff's advertising
> expenditures; (2) consumer studies linking the mark
> to a source; (3) the plaintiff's record of sales
> success; (4) unsolicited media coverage of the
> plaintiff's business; (5) attempts to plagiarize
> the mark; and (6) the length and exclusivity of the
> plaintiff's use of the mark.

*Id.* (*citing Perini*, 915 F.3d at 125).

The inquiry into the conceptual strength of the

Plaintiff's mark is unnecessary as it is a simply repeat of the

inquiry undertaken above in Section A.1.b.  However, even

assuming that Plaintiff can show its mark may have some weak

conceptual strength based on the presumption that it is

suggestive, the Court must also consider commercial strength.

*See George & Co.*, slip op. at 13-14 (crediting an unchallenged

USPTO determination that a mark was suggestive in undertaking the

"conceptual strength" analysis but noting that it would still

have to analyze whether the mark has commercial strength before

determining the mark's strength).  Case law from outside this

Circuit similarly suggests that, without a showing of commercial

strength, suggestive marks are "presumptively weak" and are "entitled to a restricted range of protection." *Herbalife Intern., Inc. v. Lumene N. Am. LLC*, 2007 WL 4225776, at *4 (C.D. Cal. 2007) (internal quotation omitted); *see also Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).

In this case, Plaintiff made a weak showing that its mark became strong through commercial success or that it has any significant commercial strength.  Plaintiff has not detailed its advertising expenditures but claims to have put an advertisement in his community association newsletter.  Def.'s Mem. in Supp. 5. Plaintiff has not provided any consumer studies linking the mark to a source, even though such studies are "generally thought to be the most direct and persuasive way of establishing secondary meaning."  *U.S. Search*, 300 F.3d at 526 n.13.  With respect to the third factor, Plaintiff has not come forward with evidence showing a record of sales success.  Plaintiff has also not shown any unsolicited media coverage of his law practice or that there have been any other attempts to "plagiarize" its mark.  The only factor that lends any weight to a finding of secondary meaning is the fact that Plaintiff's website has been in existence for more than nine years.  Looking at all the factors, the Court finds that Plaintiff has not demonstrated that his mark has acquired

secondary meaning in the context of our commercial strength analysis.

Thus, even assuming that Plaintiff's mark is suggestive, the Court finds that the absence of a showing of commercial strength makes Plaintiff's mark weak, thus the first factor weighs in favor of Defendant.

b. Other Likelihood of Confusion Factors

As to the second factor of the test for a likelihood of confusion, the Court focuses on "whether there exists a similarity in sight, sound, and meaning [of the mark] which would result in confusion." *George & Co.*, slip op. at 15. The marks are very similar, differing only by a single "l." Thus, they are similar in sight, sound, and meaning. *See Pizzeria Uno*, 747 F.2d at 1534-35. This likelihood of confusion factor regarding the similarity of the marks weighs in favor of Plaintiff.

The third factor regarding the similarity of the goods or services identified by the marks does not weigh clearly in either party's favor. To be similar, the goods in question do not have to be identical or in direct competition with each other. *George & Co.*, slip op. at 16. The services that the marks identify are broadly similar and both websites advertise legal services. Also, there is a possibility, albeit small, of overlap between Plaintiff and Defendant's practices. They

24

differ, however, in that each Spiegel lawyer practices in a different area of law.  Defendant practices primarily labor and employment law, while Plaintiff's sole member practices primarily intellectual property law.

The next two factors – whether similarities exist between the parties' facilities and between the advertising of the two parties – do not clearly weigh in either party's favor. The parties both use their marks to facilitate access to a website as a secondary matter to a physical location (a law office).  However, the websites differ in appearance and thus a potential client looking for a specific Spiegel probably will not accidentally choose the wrong one.  With regard to the similarity of their advertising, the parties have not submitted any evidence on advertising that would lead the Court to find that the this factor weighs in either party's favor.

The sixth factor, Defendant's intent in adopting its mark, appears to not weigh in either party's favor.  Plaintiff does not provide any evidence that Defendant is intentionally attempting to poach clients from Plaintiff.  Defendant did, however, set up his website, knowing that Plaintiff had a pre-existing website at SPIEGELAW.COM.  A simple phone call to his sister, from whom he received the domain name, would have put him on notice that Plaintiff was proactive in protecting his website and that Plaintiff and Defendant's sister had reached an informal

agreement by which the site was used for e-mail but not as a live website.

The seventh and the most significant factor, actual confusion, weighs in favor of Defendant.  Plaintiff introduced only one piece of evidence of actual confusion, an e-mail that was properly directed to Plaintiff but on which Defendant was copied.  Given that Plaintiff's website has been in existence for more than nine years, this is a *de minimis* showing of actual confusion.  *Id.*  ("Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*.") (*citing Petro Stopping*, 130 F.3d at 95; 6 McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed. updated June 2009)).

The eighth factor, the quality of the defendant's product, does not have any relevance in this case.  *See Sara Lee Corp.*, 81 F.3d at 467 (noting that the quality of the defendant's product factor applies in "situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods.")  There has been no suggestion that defendant's provision of legal services in his chosen field has been subpar.  Finally, the ninth factor, the sophistication of the consuming public, is similarly irrelevant.  The Fourth Circuit in *Sara Lee Corp.* noted that this factor is only relevant "when the relevant market is not the public at large."  *Id.*  The relevant market here is

public at large and there is no evidence that individuals who are looking for lawyers are more sophisticated than the public at large.

On the record presented, the Court concludes that the parties' disputes about the relative import of the evidence on the above nine factors make summary judgment inappropriate on this issue.  The cumulative weight of all nine factors does not clearly favor Plaintiff or Defendant.  Thus, the Court finds that whether a likelihood of confusion exists between the two marks is a question that cannot clearly be decided for either party based on the evidence in the record.  Accordingly, Plaintiff's motion for summary judgment as to the likelihood of confusion issue is denied.

   B. <u>Defendant's Motion for Summary Judgment</u>

Defendant asks the Court not just to grant summary judgment in his favor but also to invalidate Plaintiff's mark because it was registered fraudulently.  For the reasons outlined below, Defendant has not come forward with sufficient evidence to allow the Court to invalidate Plaintiff's mark.

   1. <u>Knowingly Inaccurate Affidavits</u>

Defendant claims that Plaintiff's 2005 registration was knowingly inaccurate and should be held invalid for that reason.  Specifically, Defendant asserts that Plaintiff knew about the use of the service mark SPIEGELLAW.COM by Defendant's predecessor in

27

interest and that Plaintiff should have known about the website
of a third Spiegel lawyer, Ms. Yasmin Spiegel, at the website
address WWW.SPIEGEL-LAW.COM.  Defendant submitted evidence
suggesting that Ms. Yasmin Spiegel made use of that web address
during at least parts of 2004 and 2005.  Def.'s Ex. 21.
Defendant claims that Plaintiff's counsel's statement that he did
not know of any service marks that were confusingly similar to
his own when he made his applications to PTO was fraudulent.
Def. Mem. in Supp. 11-13.

Plaintiff sharply disputes this characterization and
challenges the facts recited by Defendant.  It claims that, while
it knew of the existence of the SPIEGELLAW.COM domain name, it
had no reason to consider the domain name to be a "service mark"
because it was unaware that an active website existed there.  In
rebuttal, Defendant claims to have submitted evidence that his
website was active for at least some period in 2004 and 2005:
this evidence, however, does not establish a firm timeline for an
active site at SPIEGELLAW.COM.

Viewing the facts in the light most favorable to
Plaintiff, the Court agrees with Plaintiff that Defendant has
failed to come forward with sufficient evidence to allow the
Court to find that Plaintiff made a fraudulent application.

2. <u>Waiver, Acquiescence, and Laches</u>

Second, Defendant argues that waiver or acquiescence by Plaintiff and laches foreclose Plaintiff's action.  Under the doctrine of acquiescence, which is based on active consent, "[a]n infringement action may be barred . . . where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." *Sara Lee Corp.*, 81 F.3d at 462.  Laches, an active counterpart of acquiescence, also can be used to preclude relief for "a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress."  *Id.* at 461 (emphasis added).  Both doctrines assume a "preexisting infringement" and "connote consent by the owner to an infringing use of his mark."  *Id.* at 462-63.

Soon after learning of Defendant's use of a website at the domain name SPIEGELLAW.COM, Plaintiff contacted Defendant to inform him that his use was infringing on Plaintiff's mark.  Pl's Mem. in Supp. of Mot. for Summ. J. 8.  When negotiations did not prove fruitful, Plaintiff filed this lawsuit.  Pl's Mem. in Supp. 8-9.  Thus, Defendant's claim of acquiescence or laches depends on whether Lisa M. Spiegel's use of the domain name SPIEGELLAW.COM constitutes use as a service mark during the years prior to Defendant's own use of the domain name.  In other words, if Plaintiff sat on his rights with regard to Lisa M. Spiegel's

29

infringing use, then Plaintiff may be estopped from now asserting those rights against Defendant.  Plaintiff argues that Lisa M. Spiegel's use of the domain name as a de facto e-mail server does not constitute use of the mark in interstate commerce as required to establish use as a service mark.  The Court agrees.  First, the Court does not have before it any evidence showing that Lisa M. Spiegel used the domain name in trade.  Second, the Court does not have evidence that Lisa M. Spiegel was using the domain name as an active website or that Plaintiff knew or should have known about such use in a manner that would permit him to actively acquiesce to it.  Although Lisa M. Spiegel is Defendant's sister, Defendant did not obtain an affidavit or any other information from her that would allow him to show acquiescence or laches.

Additionally, Defendant's exhibit 15, a copy of the letter sent by Plaintiff to Lisa M. Spiegel, contains hand-written annotations showing Ms. Spiegel's understanding that, so long as she used the domain name as an e-mail server and not as a website, such use was acceptable to Plaintiff.  Again, Defendant did not offer an affidavit or any other information from his sister contradicting Plaintiff's representations.  Given the understanding that existed between Plaintiff and Lisa M. Spiegel, it cannot be said that Plaintiff sat on his rights or affirmatively acquiesced in the use of a competing service mark. Neither acquiescence nor laches bars this action.

30

### 3. Improper Registration

Defendant also claims that the Court should rule in his favor because Plaintiff improperly registered the mark by not disclosing that the mark was previously rejected by the USPTO. Defendant has not cited any authority that clearly shows that Plaintiff was barred from making an additional § 1(a) application to the Principal Register after his first application for his mark was rejected as being primarily a surname.  Defendant has also not shown that Plaintiff was required to disclose the previous rejection of the mark in his second application.

At oral argument, Plaintiff averred that there was no such requirement.  The Court was unable to locate any case law, treatise, or regulation to the contrary.  *See* 6 McCarthy on Trademarks and Unfair Competition § 32:103 (4th ed. updated June 2009) ("There is nothing to preclude an applicant from attempting a second time in an ex parte proceeding to register a particular mark, especially if conditions and circumstances have changed since the rendering of the refusal to register the first time. However, unsuccessful applicants for registration who have made a mere de minimis change in the description of goods and have re-applied, have found themselves precluded by the previous rejection.")  Here, for whatever reason, the USPTO accepted Plaintiff's 2005 application for the Principal Register. Defendant has not shown that the application was fraudulent or

31

incorrect, and Plaintiff – through its principal and counsel, an
intellectual property lawyer – has averred that the application
was proper.  Under these circumstances, the Court has no basis on
which to find the registration fraudulent.

 C. <u>Remedy</u>

  At oral argument, the parties represented to the Court
that they have no additional evidence to put on before trial.
Hr'g Tr. June 2009 30-31, 33.  Additionally, based on Plaintiff's
counsel's representation that he only seeks injunctive relief, an
equitable remedy that cannot be awarded by a jury, Hr'g Tr. June
2009 8, the Court found it appropriate to decide this case based
on the record and the parties agreed.  Hr'g Tr. June 2009 37.

  The parties' unwillingness to invest more time and
energy in this litigation is to some extent understandable.  Had
either party hired outside counsel, rather than representing
themselves in this matter, it is extremely unlikely that this
litigation would have progressed even this far.  The dollar value
that an objective observer would have assigned to this
Lilliputian controversy would likely be much lower than the cost
of litigating it.

  As it stands, neither party has come forward with
evidence sufficient to allow the Court to grant summary judgment
in its favor.  Additionally, neither party has put forth
sufficient evidence to prove their claims by the preponderance of

evidence to receive their desired remedy.[3]  The Court can only act on the evidence before it, and the case is devoid of evidence that supports either party's requested remedy.  The parties' failure to come forward with evidence in support of their requested remedy leaves the Court with only one recourse, unsatisfying as it may be: it will leave the parties as they are. It will not enjoin Defendant from using his own website.  It will not cancel Plaintiff's trademark registration.  It will end the case and leave the parties in the same positions in which the case began.

## IV. Conclusion

For the reasons stated above, the Court will deny Plaintiff's motion for summary judgment, deny Defendant's motion for summary judgment.

An appropriate Order will issue.


August 26, 2009                                    /s/
                                    _____
Alexandria, Virginia                        James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE


---

[3] Defendant did not file any cross-claims regarding Plaintiff's allegedly fraudulent registration of its mark but rather simply requested that the Court cancel Plaintiff's mark, if found fraudulent, in its opposition to Plaintiff's summary judgment motion.  Def.'s Opp. to Pl.'s Mot. for Summ. J. 11-12.

33